PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                    No. 00-7099

TODD LEWIS HOPKINS,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, Chief District Judge.
(CR-93-77, CA-00-525-7)

Argued: May 7, 2001

Decided: September 10, 2001

Before NIEMEYER, LUTTIG, and KING, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in
which Judge Niemeyer and Judge Luttig joined.

## COUNSEL

**ARGUED:** Eugene K. Ohm, COMMUNITY LEGAL CLINICS,
Washington, D.C., for Appellant. Andrew J. Russell, OFFICE OF
THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appel-
lee. **ON BRIEF:** Jennifer P. Lyman, COMMUNITY LEGAL CLIN-
ICS, Washington, D.C., for Appellant. Robert P. Crouch, Jr., United
States Attorney, Ruth E. Plagenhoef, Assistant United States Attor-
ney, Roanoke, Virginia, for Appellee.

**OPINION**

KING, Circuit Judge:

Todd Lewis Hopkins appeals the district court's dismissal, for lack of timeliness, of his 28 U.S.C. § 2255 motion. According to Hopkins, his petition was timely because the one-year period of limitation established in § 2255 did not commence to run until the Supreme Court's recent stop and frisk decision in *Florida v. J.L.*, 529 U.S. 266 (2000). As explained below, we find it unnecessary to consider whether Hopkins' § 2255 motion was timely, because he has failed to assert a right "newly recognized" by the Supreme Court, as required by § 2255 ¶6 (3). The Court's *J.L.* decision did not "newly recognize" any such right, but merely extended existing precedent. Accordingly, for reasons other than those relied on by the district court, we affirm the dismissal of Hopkins' § 2255 motion.

I.

A.

The factual underpinnings of the 1993 prosecution of Hopkins give rise to his present claim that he is entitled to § 2255 relief under the Supreme Court's *J.L.* decision. In January 1993, an anonymous 911 caller informed the police in Roanoke, Virginia, that a black male, wearing a long coat and bright tan shoes, looking as though he was involved in dealing drugs, had fired a handgun into the air at an intersection. Sergeant K. P. Viar responded immediately and noticed a man fitting the description given by the caller walking on a sidewalk a few blocks from the intersection. This man, who turned out to be Hopkins, had his hands in his coat pockets.

Sgt. Viar stopped Hopkins, frisked him, and located a firearm in his coat pocket. Hopkins was then arrested for illegal possession of a concealed weapon, and a search conducted incident to the arrest revealed that he also possessed two bags containing seventeen pieces of crack cocaine.

Hopkins was indicted in May 1993 in the Western District of Virginia on three separate firearm and drug charges. In July 1993, the

district court denied his motion to suppress the evidentiary use of the semi-automatic pistol and the drugs seized during his arrest. In August 1993, a jury found Hopkins guilty on all charges. The district court sentenced Hopkins to 270 months imprisonment. On direct appeal, we affirmed his convictions and sentence. *United States v. Hopkins*, 51 F.3d 269 (4th Cir. 1995) (unpublished).

## B.

On March 28, 2000, the Supreme Court rendered its decision in *J.L.*, 529 U.S. at 266, which Hopkins now contends constituted the initial recognition by the Court of a "newly recognized" right under § 2255 ¶6 (3).[1] Asserting that *J.L.* mandates that his 1993 convictions and sentence be set aside, Hopkins filed a pro se § 2255 motion in June 2000 in the district court. Although the one-year period of limitation specified in § 2255 had long expired, Hopkins asserted that his motion was nevertheless timely under § 2255 ¶6 (3), because it was based on *J.L.*'s initial recognition, in the year 2000, of a "newly recognized" right.

The district court by its Memorandum Opinion decided that Hopkins' § 2255 motion was untimely and dismissed it. The court ruled that § 2255 ¶6 (3) "only applies when the Supreme Court . . . either explicitly states that it should [be applied retroactively] in the opinion, or uses the new rule in a collateral proceeding." It did not address the

---

[1]Under the provisions of § 2255 ¶6 (3), upon which Hopkins relies:

A 1-year period of limitation shall apply to a motion under his section. The limitation period shall run from the latest of —

. . .

(3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.

Section 2255 ¶6 (3) was enacted in 1996 as part of the Antiterrorism and Effective Death Penalty Act (AEDPA). Assuming Hopkins does not qualify for one of AEDPA's exceptions, the limitation period for Hopkins to file § 2255 motions relating to his 1993 convictions and sentence expired on April 24, 1997, one year after AEDPA's effective date.

"newly recognized" right question embodied in § 2255 ¶6 (3), and it did not decide whether the *J.L.* decision involved the initial recognition by the Court of such a right. Hopkins filed a timely notice of appeal, and we possess jurisdiction under 28 U.S.C. § 1291.

## II.

We review de novo a district court's grant or denial of a writ of habeas corpus on questions of law. *United States v. Brown*, 155 F.3d 431, 434 (4th Cir. 1998) (reviewing petition under § 2255). In conducting such a review, "we are not restricted to the basis upon which the district court made its ruling, but may affirm on any legal and factual basis fairly presented in the district court." *PHP Healthcare Corp. v. EMSA Ltd. P'ship*, 14 F.3d 941, 945 (4th Cir. 1993); *see also In re Maco Homes*, 180 F.3d 163, 165 n.4 (4th Cir. 1999) ("[W]e may affirm the district court on grounds other than those stated in the order below.").

## III.

Hopkins maintains that the Supreme Court, in its *J.L.* decision, initially recognized the constitutional right not to be frisked by the authorities purely on the basis of a descriptive anonymous tip. Hopkins, however, misapprehends *J.L.*'s place in the Court's stop and frisk jurisprudence. As explained below, *J.L.* cannot create a "newly recognized" right because it simply is an application of the reasonable suspicion standard first recognized in *Terry v. Ohio*, 392 U.S. 1, 30 (1968), and further articulated in *Adams v. Williams*, 407 U.S. 143 (1972), and *Alabama v. White*, 496 U.S. 325 (1990).

### A.

We have not yet had occasion to establish a framework for determining, under § 2255 ¶6 (3), whether or when a Supreme Court decision constitutes the initial recognition of a "newly recognized" right. Nevertheless, it is axiomatic that a new right cannot be "initially recognized" when the Court has merely applied its precedent to a particular factual setting.[2] *Haugh v. Booker*, 210 F.3d 1147, 1149 (10th Cir.

---

[2]Because this case deals with the issue of a "newly recognized" right, rather than the retroactivity of a new constitutional rule, the Supreme

2000) ("In *Bailey [v. United States*, 516 U.S. 137 (1995)], the Supreme Court recognized for the first time a defendant's right to be free of criminal liability under section 924(c)(1) for conduct that had previously supported a conviction in virtually every circuit, thus recognizing a new right within the meaning of section 2255(3)."); *United States v. Tush*, No. 99-20012-01-KHV, 2001 WL 309416, at *2 (D. Kan. Feb. 2, 2001) (concluding that the Supreme Court's decision in *Jones v. United States*, 529 U.S. 848 (2000), was the initial recognition of a new right because it was the first decision to recognize that certain activities were insufficient to satisfy the interstate commerce requirement in 18 U.S.C. § 844(f)(1)); *United States v. Barnes*, Nos. Cr.A. 95-349-01, Civ.A. 00-4800, 2001 WL 43646, at *3 (E.D. Pa. Jan. 2, 2001) ("*J.L.* did not announce a right 'newly recognized by the Supreme Court'. . . . Rather, the Supreme Court simply reaffirmed its well-established 'stop and frisk' jurisprudence."); *United States v. Valesquez*, No. Crim.A. 94-293, 1999 WL 280441, at *1 (E.D. La. May 3, 1999) ("[T]he Supreme Court did not recognize any 'new' right in *Knowles [v. Iowa*, 525 U.S. 113 (1998)]. Rather, it applied a well established Fourth Amendment right to a particular situation."); *cf. Kerman v. City of New York*, No. 00-9130, 2001 WL 845422, at *5 (2d Cir. July 26, 2001) (concluding that *J.L.* did not establish a new rule of constitutional law, for qualified immunity purposes, because it was a logical extension of *Alabama v. White*, 496 U.S. 325 (1990)).

---

Court's decision in *Teague v. Lane*, 489 U.S. 288 (1989), is not controlling. Retroactivity of new rules is a narrower concept than the initial recognition of new rights because the former is limited to constitutional claims. *United States v. Lopez*, 248 F.3d 427, 430-31 (5th Cir. 2001), *petition for cert. filed*, No. 01-5018, June 29, 2001 (finding that the definition of right in § 2255 includes statutory rights); *United States v. Lloyd*, 188 F.3d 184, 187 (3d Cir. 1999) (stating "[t]hat the right is founded on statutory interpretation rather than on a new rule of constitutional law is of no moment for purposes of the limitation period under § 2255"). We nonetheless find *Teague* instructive. It teaches that "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government . . . . To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction becomes final." *Teague*, 489 U.S. at 301.

B.

The Supreme Court's decision in *J.L.* resulted from the logical application of its stop and frisk jurisprudence. *See J.L.*, 529 U.S. at 269. In *Terry* the Court, speaking through Chief Justice Warren, held:

> [w]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, . . . and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Terry*, 392 U.S. at 30.

In its *Adams v. Williams* decision in 1972, then-Justice Rehnquist, writing for the Court's majority, applied the *Terry* principle to an "informant who was known to [the police officer] personally and [who] had provided [the police officer] with [reliable] information in the past." *Adams*, 407 U.S. at 146. The *Adams* decision developed a key principle of stop and frisk jurisprudence — in order to justify a stop and frisk procedure the information in possession of the authorities must "carr[y] enough *indicia of reliability* to justify the [police] officer's forcible stop." *Id.* at 147 (emphasis added). Additionally, in *Adams* the Court acknowledged that an anonymous telephone tip would be even less reliable than a tip given by a known informant.[3] *Id.* at 146 (stating that an anonymous tip has less reliability than a tip

---

[3]Eleven years after *Adams*, the Court was faced with a fact situation concerning an anonymous tip in the probable cause context, as opposed to the fact situations in *Terry* and *Adams*, which involved the less rigorous reasonable suspicion standard. *Illinois v. Gates*, 462 U.S. 213 (1983). The Court recognized that an anonymous tip alone will seldom be sufficient to demonstrate an informant's basis of knowledge or veracity to satisfy probable cause. *Id.* at 236-37. At the same time, however, it recognized that in some situations an anonymous tip might provide the "reasonable suspicion" necessary to permit the authorities to conduct a stop and frisk procedure. *Id.* at 237 ("[W]hile a conscientious assessment of the basis for crediting such tips is required by the Fourth Amendment, a standard that leaves virtually no place for anonymous citizen informants is not.").

given by an informant whose identity is known).

In 1990, in *Alabama v. White*, the Court determined that an anonymous tip correctly predicting the suspect's future behavior "exhibited sufficient indicia of reliability to justify" the police in carrying out of a stop and frisk procedure. *White*, 496 U.S. at 332. In this decision, Justice White emphasized that "'the anonymous tip [in question] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.'" *Id.* at 332 (quoting *Gates*, 462 U.S. at 245). Nonetheless, the Court cautioned that *White* was a "close case," *id.* at 332, and that "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." *Id.* at 329.

Last year, in its *J.L.* decision, the Court confronted the constitutionality of a stop and frisk procedure where the police acted *only* on the basis of an anonymous tip.[4] Thus, the Court confronted the question of "whether the [anonymous] tip pointing to J.L had the [requisite] indicia of reliability" to justify the police officers' conducting the stop and frisk procedure. *Id.* at 270. In this instance, the Court concluded that "[i]f *White* was a close case on the reliability of anonymous tips, [*J.L.*] surely falls on the other side of the line." *Id.* at 271. That is, the anonymous tip in *J.L.* simply lacked the necessary indicia of reliability, as suggested by *White*, to justify a stop and frisk procedure.[5] *Id.*

---

[4]In *J.L.*, the police received an anonymous tip identifying "a young black male standing at a particular bus stop and wearing a plaid shirt" as carrying a gun. Nothing else was known about the informant. Based only on this information, the police went to the bus stop, observed an individual matching the description contained in the anonymous tip, and approached the individual, who turned out to be J.L. They frisked J.L. and discovered a firearm in his pocket. *J.L.*, 529 U.S. at 268.

[5]Of additional significance, the Court in *J.L.* refused to recognize an automatic "firearm exception" to *Terry*. Prior to *J.L.*, some courts had suggested or interpreted *White* as allowing a descriptive anonymous tip, standing alone, to justify conducting a stop and frisk procedure when the tip asserted that the suspect possessed a firearm. *United States v. McClinnhan*, 660 F.2d 500, 502-03 (D.C. Cir. 1981), *abrogation recognized by United States v. Thompson*, 234 F.3d 725, 728 (D.C. Cir. 2000) (finding

## C.

Our analysis of the Court's stop and frisk jurisprudence, as it relates to anonymous tips, mandates the conclusion that its *J.L.* decision simply extended the principles of *Terry*, as applied in *Adams* and *White*, to the particular fact situation involved there — an anonymous tip standing alone. In *J.L.*, the Court made explicit what it had implied in *Adams* and *White*; that is, a descriptive anonymous tip, without more, lacks the required indicia of reliability to justify the authorities in carrying out a stop and frisk procedure. More precisely, the occasion of the Court's decision in *J.L.* is not the date on which the right sought to be asserted by Hopkins (i.e., that right not to be stopped and frisked by the authorities when a descriptive anonymous tip is the only basis for reasonable suspicion) was "initially recognized" by the Supreme Court. This right had been recognized by the Court well before his 1993 convictions, as evidenced by its decisions in *Terry*, *Adams*, and *White*.

We find our holding today to be in accord with the Second Circuit's opinion in *Kerman v. City of New York*, No. 00-9130, 2001 WL 845422, at *1. That court determined, for qualified immunity purposes, that "J.L. did not purport to establish a 'new' rule of constitutional law. Instead, the Court explained its holding as a logical extension of *Alabama v. White*." *Id.* at *5. We agree — the *J.L.* decision simply reaffirms the Court's time-honored stop and frisk jurisprudence, the essence of which is embodied in *Terry* and its progeny.[6]

---

no Fourth Amendment violation for a stop and frisk procedure based solely on a descriptive anonymous tip involving allegations that a suspect had a firearm); *see also United States v. Bold*, 19 F.3d 99, 103-04 (2d Cir. 1994) (recognizing a firearm exception to *Terry* in dicta). The Court in *J.L.* directly rejected engrafting a firearm exception onto the *Terry* principle and held "that an anonymous tip lacking indicia of reliability of the kind contemplated in *Adams* and *White* does not justify a stop and frisk whenever and however it alleges the illegal possession of a firearm." *J.L.*, 529 U.S. at 274.

[6]Our conclusion is consistent with the single decision directly addressing the question of whether the Court in *J.L.* initially recognized a "newly recognized" right for purposes of maintaining a § 2255 motion.

## IV.

Because the Court's decision in *J.L.* does not initially recognize a new right under § 2255, Hopkins' motion must fail, and we affirm its dismissal.[7]

*AFFIRMED*

---

*Barnes*, 2001 WL 43646, at *3. In *Barnes*, the district court for the Eastern District of Pennsylvania concluded that "*J.L.* did not announce a newly recognized right by the Supreme Court . . . . Rather, the Supreme Court simply reaffirmed its well-established 'stop and frisk' jurisprudence." *Id.*

[7]We must reserve for another day whether a § 2255 motion may be properly addressed by a district court prior to a determination by the Supreme Court that a "newly recognized" right is to be retroactively applicable to cases on collateral review.