PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
             *Plaintiff-Appellee,*

v.

RONNIE BOWMAN, a/k/a Young,
             *Defendant-Appellant.*

No. 02-4700

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CR-01-349)

Argued: September 24, 2003

Decided: October 30, 2003

Before NIEMEYER, LUTTIG, and WILLIAMS, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Luttig and Judge Williams joined.

## COUNSEL

**ARGUED:** Richard Ara Harpootlian, RICHARD A. HAR-
POOTLIAN, P.A., Columbia, South Carolina, for Appellant. John
Michael Barton, Assistant United States Attorney, Columbia, South
Carolina, for Appellee. **ON BRIEF:** J. Strom Thurmond, Jr., United
States Attorney, Mark C. Moore, Assistant United States Attorney,
Columbia, South Carolina, for Appellee.

**OPINION**

NIEMEYER, Circuit Judge:

Three months after Ronnie Bowman pleaded guilty to two counts of drug trafficking, he filed a motion to withdraw his plea under what was then Federal Rule of Criminal Procedure 32(e), but which is now Rule 11(d), contending that he was actually innocent of the charges, that he lied at the guilty-plea colloquy, and that he did not have the close assistance of competent counsel. Finding that Bowman's conclusory statement that he had "lied" at the guilty-plea colloquy provided no credible evidence of his innocence and that Bowman had the close assistance of competent counsel, the district court denied Bowman's motion. For the reasons that follow, we affirm.

I

Beginning at least as early as 1996, Ronnie Bowman participated in a large drug conspiracy, distributing heroin from his apartment and elsewhere in Columbia, South Carolina. The conspiracy, which lasted four years, involved more than 39 co-conspirators, several of whom were arrested and pleaded guilty, agreeing to testify against Bowman and others.

In a superseding indictment, Bowman was indicted in six counts for conspiracy, drug trafficking, and obstruction of justice, and on October 22, 2001, trial on these counts commenced before a jury. After the first day of trial, during which five witnesses testified on behalf of the government, Bowman tendered a guilty plea to Count 1 (conspiracy to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 846) and Count 4 (distribution of a controlled substance that caused the death of another person in violation of 21 U.S.C. § 841(b)(1)(C)) pursuant to the terms of a written plea agreement dated October 23, 2001. Under the agreement, the government agreed to dismiss the remaining three counts and to file a motion for a downward departure to give Bowman a sentence of 22 years' imprisonment, provided Bowman thereafter cooperate with the government in several specified respects and tell the truth. The parties' agreement to a 22-year sentence was subject to court approval and foreclosed the potential life sentences that Bowman could otherwise

have received for the two counts. The agreement provided that if Bowman failed to cooperate or failed to tell the truth, he would be denied the benefit of the 22-year downward departure, but he could not withdraw his guilty plea. In addition, the government reserved the right to argue for a maximum sentence.

During a lengthy plea colloquy conducted on October 23, 2001, in accordance with Federal Rule of Criminal Procedure 11, the district court determined that Bowman's plea was knowing and voluntary. During critical portions of the colloquy, the court asked Bowman to state his understanding of that portion of the proceeding in his own words. Bowman thus testified under oath about his understanding of the nature of the entire proceeding, the nature of the charges, and the facts on which the charges were based. The court also made repeated inquiries of Bowman with respect to the nature of his relationship with his attorney. Bowman stated that he was satisfied with his attorney's representation and that his attorney "has been working hand in hand with me" and did everything that Bowman asked him to do. At the conclusion of the Rule 11 colloquy, the district court stated:

> It is the finding of the court in the case of the U.S. versus Ronnie Bowman, also known as "Young," that the defendant knows his right to a trial, knows the maximum possible punishment, is fully competent and capable of entering an informed plea, and that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of these offenses. His plea is, therefore, accepted and he is now adjudged guilty of those offenses.

Three weeks later, Bowman filed a *pro se* motion to discharge his trial counsel, which the court granted. With the assistance of new counsel, Bowman then filed a motion on January 24, 2002, to withdraw his guilty plea. The district court held hearings on this motion on May 2 and August 12, 2002. Bowman based his motion principally on a toxicology report developed as part of the autopsy of Mark Nunn, the victim referred to in Count 4. Because the report indicated a finding of no heroin or fentanyl in Nunn's system, Bowman asserted that it showed that he was not responsible for Nunn's death, as charged in Count 4. Bowman also stated to the court that he was actu-

ally innocent of the conduct charged in both Count 4 and Count 1. Finally, Bowman claimed that he did not have the close assistance of competent counsel in that counsel failed to review the toxicology report with him closely and that counsel advised Bowman to enter a plea as to both counts, regardless of Bowman's guilt. To support his motion to withdraw his guilty plea, Bowman conclusorily stated to the district court that he had lied outright during his guilty-plea colloquy. When the district court pressed Bowman further on this statement in connection with each count, Bowman said, first with respect to his Count 1 plea:

| THE COURT: | What you told me then was a lie? |
|---|---|
| THE DEFENDANT: | I have to say yes, now, yes, sir. |

Similarly in connection with his plea on Count 4, Bowman said:

| THE COURT: | So, when you told me . . . [Nunn] took that bag [of heroin] from you and went in your bathroom and used it, you were lying to me again? |
|---|---|
| THE DEFENDANT: | Yes, Your Honor, I did not tell the truth. |

Finally, Bowman's new attorney reaffirmed that his client was claiming to have lied during the earlier guilty-plea proceeding:

| THE COURT: | So, let me ask you this, so he was more than willing to lie to the court? |
|---|---|
| COUNSEL: | He was willing to say whatever the government asked him to say. |
| THE COURT: | Well, was he willing to tell me something that wasn't the truth? |
| COUNSEL: | I think he's testified previously on that point, Your Honor. |

| | |
|---|---|
| THE COURT: | So that he is? |
| COUNSEL: | I think he was willing to say what-ever was necessary to get the plea. |
| THE COURT: | So is he willing to say whatever is necessary to try to win this motion today? |
| COUNSEL: | I'm not, Your Honor, but — and he has not testified and will not testify. |

The district court then reviewed the applicable factors articulated in *United States v. Moore*, 931 F.2d 245 (4th Cir. 1991). It noted that Bowman was not contending that his plea was unknowing or involuntary. It found that Bowman did not credibly assert his legal innocence. It found that the delay between the plea and the filing of the motion was not long and favored Bowman, but only slightly. It found that Bowman "absolutely" had had the close assistance of competent counsel. It found that the government would be prejudiced by the withdrawal of the guilty plea because of the difficulty in reassembling the long list of witnesses that the government had ready at the trial. Finally, it found that the withdrawal would inconvenience the court and waste judicial resources. Summarizing, the court stated:

> [Bowman's] only argument [for withdrawing his plea] is, he's willing to lie whenever he needs to help himself. That's basically what he said. And it makes me wonder about some of his assertions now, although I haven't really heard any assertions now that really make a legal difference in this case.
>
> But he hasn't offered any credible evidence of his innocence as to either charge, quite frankly.
>
> * * *
>
> But let me make this very clear, I have had a number of motions to withdraw guilty pleas in front of me in eleven

and a half years, and I would rate this motion at about the bottom of credence and any basis to grant it.

The court accordingly denied Bowman's motion to withdraw his guilty plea. Hearing from the government on how Bowman breached his plea agreement by refusing to cooperate, to be debriefed, to take a polygraph test, and to stick with his plea agreement, the court proceeded to sentence Bowman to life imprisonment.

Bowman filed this appeal on the single issue of whether the district court abused its discretion in denying Bowman's motion to withdraw his guilty plea.

## II

Bowman contends that the district court abused its discretion in denying his motion to withdraw his guilty plea because (1) he credibly asserted actual innocence; (2) there was "little delay" between his plea and his motion; and (3) he did not have the close assistance of competent counsel. Points (1) and (3) rest on Bowman's contention that he did not fully appreciate the contents of the toxicology report prepared in connection with the autopsy of Nunn, which showed no evidence of fentanyl or heroin in Nunn's system, and that Bowman's trial counsel failed to make clear that Bowman understood this fact, even though Bowman concedes that his trial counsel explained to him both the report and the government's position in response to the report. Bowman asserts that had he appreciated the full import of the toxicology report, he would not have pleaded guilty to Count 4, charging him with distributing a controlled substance to Nunn and thereby causing his death. And without pleading guilty to Count 4, he asserts he would not have pleaded guilty to Count 1, the heroin conspiracy count.

In specific response to Bowman's reliance on the toxicology report, the government points out that Bowman not only had the report before he pleaded guilty but he had also been provided with the government's explanation of why fentanyl and heroin would not show up in Nunn's system under the circumstances of this case. More generally, the government contends that ample evidence of actual guilt was before the court at the time it accepted Bowman's guilty plea and that

Bowman failed to present any credible evidence of actual innocence at the hearing on his motion to withdraw his guilty plea. The government also contends that Bowman failed to present any evidence that Bowman's trial counsel was incompetent or failed to provide Bowman with close assistance.

Federal Rule of Criminal Procedure 11 authorizes the withdrawal of a guilty plea before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). A defendant has no "absolute right" to withdraw a guilty plea, and the district court has discretion to decide whether a "fair and just reason" exists upon which to grant a withdrawal. *United States v. Ubakanma*, 215 F.3d 421, 424 (4th Cir. 2000); *Moore*, 931 F.2d at 248. The most important consideration in resolving a motion to withdraw a guilty plea is an evaluation of the Rule 11 colloquy at which the guilty plea was accepted. *See United States v. Wilson*, 81 F.3d 1300, 1307 (4th Cir. 1996). Thus, when a district court considers the plea withdrawal motion, "'the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary' . . . . A voluntary and intelligent plea of guilty 'is an admission of all the elements of a formal criminal charge,' . . . and constitutes an admission of all 'material facts alleged in the charge.'" *United States v. Willis*, 992 F.2d 489, 490 (4th Cir. 1993) (quoting *United States v. Broche*, 488 U.S. 563, 569 (1989); *McCarthy v. United States*, 394 U.S. 459, 466 (1969); and *United States v. Johnson*, 888 F.2d 1255, 1256 (8th Cir. 1989)). Accordingly, a properly conducted Rule 11 guilty plea colloquy leaves a defendant with a very limited basis upon which to have his plea withdrawn. As we stated in *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992) (en banc):

> If an appropriately conducted Rule 11 proceeding is to serve a meaningful function, on which the criminal justice system can rely, it must be recognized to raise a strong presumption that the plea is final and binding.

When considering a defendant's motion to withdraw his guilty plea, the court may also consider other circumstantial factors that relate to whether the defendant has advanced a fair and just reason. Thus, we have articulated the following, nonexclusive list of factors for consideration in deciding a withdrawal motion:

(1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

*Moore*, 931 F.2d at 248.

In this appeal, Bowman rests his argument that the district court abused its discretion in denying his motion on *Moore* factors (2), (3), and (4): whether the defendant has credibly asserted his innocence; whether there has been a delay between the entering of the plea and the filing of the motion; and whether the defendant had close assistance of competent counsel. We address these seriatim.

A

Bowman's principal argument rests on his claim that the toxicology report prepared as part of Nunn's autopsy indicated that Nunn had no heroin or fentanyl in his system and therefore that Bowman could not have caused Nunn's death by giving him heroin laced with fentanyl. Although Bowman admits that his trial attorney discussed the toxicology report with him before he pleaded guilty, Bowman asserts that his decision to plead guilty was not adequately informed by this discussion because Bowman neither physically saw the report nor read it in full. But Bowman has presented no explanation why reading the report would have added anything. Nor has he proffered any reason why the government's proposed testimony explaining the report would be false or irrational. In its opening statement before the jury, the government acknowledged that the toxicology report failed to show the presence of heroin, but it stated that it was prepared to prove, through the testimony of an expert witness, that a negative toxicology report was not unusual and that the evidence in fact showed that Nunn's death was drug induced.

Whatever the strength of the government's evidence, however, the record demonstrates that Bowman was aware of the toxicology report

before tendering his plea and that he discussed the substance of the report with his attorney. Both Bowman and his attorney admitted this. Having full notice of this evidence before his plea, Bowman nonetheless testified under oath during the Rule 11 plea hearing that he was in fact guilty of the crime charged in Count 4, charging Bowman with distributing drugs that caused a death. Bowman stated:

> On around about August 15, 1999 a friend of mine named Mark Nunn came to my house to purchase some heroin. He was ill and sick and I gave him a bag. He went into my bathroom and used it in my bathroom and came out, and the results of using it, the dope, he OD'd.

In addition to this factual confession, two witnesses had already testified at trial that they came to Bowman's apartment shortly after Nunn took the heroin that Bowman had given him and that Bowman admitted to them that he had provided Nunn with the heroin on which Nunn had fatally overdosed. These two witnesses testified to then helping Bowman remove Nunn's body from Bowman's apartment. Bowman's conclusory statement made later at the hearing on the withdrawal motion that he had lied is thus belied by the record.

With respect to the record relating to Bowman's guilty plea on the conspiracy count, the facts again belie Bowman's statement at the plea withdrawal hearing that he had lied. At the guilty plea hearing, Bowman confessed under oath specifically to the illegal conduct charged in Count 1 as follows:

THE COURT:       And did you enter into a conspiracy that involved at least one kilogram of heroin?

THE DEFENDANT:  Yes, sir.

THE COURT:       Tell me in your own words what you did under the conspiracy count.

THE DEFENDANT:  Me and a few other people that was in the original indictment of 39 peo-

>                                 ple or more, a few of them in the
>                                 indictment I conspired with and sold
>                                 drugs to some of the people in and
>                                 out of the indictment, probably was
>                                 indicted and some wasn't indicted.
>                                 Through the course and between
>                                 that time I might have sold a kilo or
>                                 more of heroin.
>
> THE COURT:                      And you knew it was heroin at the
>                                 time you were selling it?
>
> THE DEFENDANT:  Yes, sir.

This admission was corroborated by the testimony of four witnesses who had already testified at the trial. These witnesses testified in laborious detail about hundreds of transactions over a period of four years, involving the sale of thousands of bags of heroin. One witness alone testified to buying 3,000-4,000 "bags" of heroin from Bowman through daily transactions over a period of years. Moreover, there is simply no evidence in the record to contradict these facts on which the court relied to accept Bowman's guilty plea.

Based on this record, we agree with the district court that the defendant did not "credibly assert[ ] his legal innocence."

### B

On the third *Moore* factor — that there had not been a prejudicial delay between the entering of the plea and the filing of the motion — the district court agreed with Bowman that the delay of three months was not too long. But this single factor, which the district court indicated slightly favored Bowman's cause, is insufficient to justify a withdrawal of his plea in view of all the other factors weighing heavily against granting the motion. *See Ubakanma*, 215 F.3d at 425.

### C

Finally, Bowman contends that he did not have the close assistance of competent counsel, the fourth *Moore* factor. To prevail on this fac-

tor, Bowman must demonstrate "(1) that his counsel's performance 'fell below an objective standard of reasonableness' and (2) that 'there [was] a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. DeFreitas*, 865 F.2d 80, 82 (4th Cir. 1989) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57, 59 (1985)); *see also Ubakanma*, 215 F.3d at 425. Under this standard, our inquiry is limited to whether Bowman's counsel "was reasonable 'under prevailing professional norms,' and in light of the circumstances." *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002) (stating standard in a Sixth Amendment context) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)); *see also Hill*, 474 U.S. at 58 (holding that the two-part *Strickland* test applies to motions to withdraw guilty pleas based on ineffective assistance of counsel).

To satisfy his burden, Bowman again pointed to his lack of specific knowledge of the contents of the toxicology report; to the fact that his trial counsel did not hire an expert witness to testify to other causes of Nunn's death; and to his trial counsel's efforts in convincing him to plead guilty to Counts 1 and 4.

Again, nothing in the record supports Bowman's contentions. To the contrary, Bowman asserted, and his counsel testified to the fact, that Bowman and his counsel discussed the toxicological report and its importance. Whether counsel should have retained an expert is speculative, and this argument falls into the category of merely second-guessing a defense strategy. Bowman's counsel testified at the withdrawal hearing that he did not seek to hire an expert witness precisely because the government's own toxicology report was so weak that it could well be used to provide a strong defense on Bowman's behalf. His counsel was genuinely worried that an additional expert witness might actually work to Bowman's disadvantage. Moreover, he testified that he advised Bowman that if Bowman disagreed with the strategy, Bowman could and should hire new counsel.

As for recommending the decision to plead guilty, such a recommendation was a judgment call that was discussed with Bowman. The record shows that Bowman and his counsel discussed the relative strengths and weaknesses of the case and the sentences that Bowman was facing, both under the plea agreement and as a result of a convic-

tion at trial. If Bowman were to fulfill his obligations under the proposed plea agreement, he would receive a sentence of 22 years' imprisonment. On the other hand, if he were to be found guilty at trial on either Count 1 or Count 4, he would face a minimum sentence of 20 years' imprisonment and a maximum sentence of life imprisonment. This record simply fails to support Bowman's contention that he suffered from a lack of close assistance of competent counsel.

At bottom, the record relevant to Bowman's withdrawal motion reveals at most an attempt by Bowman to second guess his guilty plea, for whatever reason, by manipulating known beneficial evidence contained in the toxicology report and by claiming that he lied to the court. The district court was well within its discretion to reject this effort.

III

The Rule 11 colloquy is designed to provide a structure to protect the defendant against making an uninformed and involuntary decision to plead guilty and to protect the public from an unjust judgment of guilty when a public trial has not been conducted. Because a trial is not held when a defendant pleads guilty, the court must be able to rely on the defendant's self-interest and his truthful testimony in deciding to find the defendant guilty based on a guilty plea. Moreover, to avoid dependence on pre-colloquy statements, agreements, advice, and misunderstandings, the court at the Rule 11 colloquy is required to review with the defendant *de novo* all of the material components of the guilty plea. As a consequence, when a defendant says he lied at the Rule 11 colloquy, he bears a heavy burden in seeking to nullify the process. We repeat what we said before, that an appropriately conducted Rule 11 colloquy can only serve meaningfully if the court is entitled to rely on the defendant's statements made under oath to accept a guilty plea. *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992) (en banc); *see also United States v. Wilson*, 81 F.3d 1300, 1307 (4th Cir. 1996) (noting that the key to whether a motion to withdraw a guilty plea should be granted is "whether or not the Rule 11 proceeding was properly conducted"). To view the Rule 11 plea colloquy as a procedural game in which pieces are moved and manipulated to achieve a result that can beat the system established for providing due process to the defendant undermines that very pro-

cess. And when a defendant asserts, in support of a motion to withdraw a guilty plea, that he lied in pleading guilty — and repeatedly so — he provides an example of such manipulation.

The judgment of the district court is

*AFFIRMED*.