**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-7804

UNITED STATES OF AMERICA,

                  Plaintiff - Appellee,

      v.

RONNIE BOWMAN,

                  Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Cameron McGowan Currie, District Judge.  (CR-01-349; CA-05-677-3-22)

Argued:  January 29, 2008        Decided:  February 29, 2008

Before WILLIAMS, Chief Judge, NIEMEYER, Circuit Judge, and Liam O'GRADY, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** John C. Massaro, ARNOLD & PORTER, L.L.P., Washington, D.C., for Appellant.  Mark C. Moore, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.  **ON BRIEF:** Rhonda L. Stewart, ARNOLD & PORTER, L.L.P., Washington, D.C., for Appellant.  Reginald I. Lloyd, United States Attorney, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

We granted Ronnie Bowman a certificate of appealability ("COA") to consider: (1) whether there was an insufficient factual basis to support Bowman's guilty plea to distribution of a controlled substance resulting in the death of another person, such that the district court committed error in accepting Bowman's guilty plea to the charge; and (2) whether the district court erred in its instruction regarding the elements of conspiracy to distribute one kilogram or more of heroin, in violation of 21 U.S.C.A. § 846 (West 1999 & Supp. 2007). Concluding that both issues were procedurally defaulted and that Bowman cannot show cause and actual prejudice excusing said default, we affirm the district court's denial of Bowman's motion made under 28 U.S.C.A. § 2255 (West 2006).

I.

The facts and procedural history are thoroughly laid out in our opinion on Bowman's direct appeal, United States v. Bowman, 348 F.3d 408 (4th Cir. 2003) ("Bowman I"), and we repeat them here only as necessary to decide Bowman's current § 2255 motion. A federal grand jury sitting in the District of South Carolina indicted Bowman, along with his girlfriend, Jerrilyn Gray, on March 20, 2001, charging Bowman and Gray in an eight-count indictment relating to drug distribution. Relevant here, Count One charged

2

Bowman with conspiracy to distribute one kilogram or more of heroin, in violation of 21 U.S.C.A. § 846 and 18 U.S.C.A. § 2 (West 2000 & Supp. 2006), and Count Four charged Bowman with distribution of heroin that resulted in the death of another person--Bowman's friend and frequent customer, Mark Nunn--in violation of 21 U.S.C.A. § 841(b)(1)(C) and 18 U.S.C.A. § 2. In a superseding indictment filed September 21, 2005, Count Four was amended by replacing the word "heroin" with the phrase "Schedule I and Schedule II controlled substance(s)." (J.A. at 24.)

Bowman's trial began on October 22, 2001. We succinctly summarized the subsequent events in Bowman I:

> After the first day of trial, during which five witnesses testified on behalf of the government, Bowman tendered a guilty plea to Count 1 (conspiracy to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 846) and Count 4 (distribution of a controlled substance that caused the death of another person in violation of 21 U.S.C. § 841(b)(1)(C)) pursuant to the terms of a written plea agreement dated October 23, 2001. Under the agreement, the government agreed to dismiss the remaining three counts and to file a motion for a downward departure to give Bowman a sentence of 22 years' imprisonment, provided Bowman thereafter cooperate with the government in several specified respects and tell the truth. The parties' agreement to a 22-year sentence was subject to court approval and foreclosed the potential life sentences that Bowman could otherwise have received for the two counts. The agreement provided that if Bowman failed to cooperate or failed to tell the truth, he would be denied the benefit of the 22-year downward departure, but he could not withdraw his guilty plea. In addition, the government reserved the right to argue for a maximum sentence.
>
> During a lengthy plea colloquy conducted on October 23, 2001, in accordance with Federal Rule of Criminal Procedure 11, the district court determined that Bowman's

3

plea was knowing and voluntary. During critical portions of the colloquy, the court asked Bowman to state his understanding of that portion of the proceeding in his own words. Bowman thus testified under oath about his understanding of the nature of the entire proceeding, the nature of the charges, and the facts on which the charges were based. The court also made repeated inquiries of Bowman with respect to the nature of his relationship with his attorney. Bowman stated that he was satisfied with his attorney's representation and that his attorney "has been working hand in hand with me" and did everything that Bowman asked him to do. At the conclusion of the Rule 11 colloquy, the district court stated:

> It is the finding of the court in the case of the U.S. versus Ronnie Bowman, also known as "Young," that the defendant knows his right to a trial, knows the maximum possible punishment, is fully competent and capable of entering an informed plea, and that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of these offenses. His plea is, therefore, accepted and he is now adjudged guilty of those offenses.

Three weeks later, Bowman filed a pro se motion to discharge his trial counsel, which the court granted. With the assistance of new counsel, Bowman then filed a motion on January 24, 2002, to withdraw his guilty plea. The district court held hearings on this motion on May 2 and August 12, 2002. Bowman based his motion principally on a toxicology report developed as part of the autopsy of Mark Nunn, the victim referred to in Count 4. Because the report indicated a finding of no heroin or fentanyl in Nunn's system, Bowman asserted that it showed that he was not responsible for Nunn's death, as charged in Count 4. Bowman also stated to the court that he was actually innocent of the conduct charged in both Count 4 and Count 1. Finally, Bowman claimed that he did not have the close assistance of competent counsel in that counsel failed to review the toxicology report with him closely and that counsel advised Bowman to enter a plea as to both counts, regardless of Bowman's guilt. To support his motion to withdraw his guilty plea, Bowman

4

conclusorily stated to the district court that he had lied outright during his guilty-plea colloquy.

Bowman I, 348 F.3d at 411-12.

The district court declined to permit Bowman to withdraw his guilty plea, a ruling we affirmed on appeal. Bowman I, 348 F.3d at 416-17. Of particular significance, in Bowman's first appeal we summarized his claim as follows:

Bowman's principal argument rests on his claim that the toxicology report prepared as part of Nunn's autopsy indicated that Nunn had no heroin or fentanyl in his system and therefore that Bowman could not have caused Nunn's death by giving him heroin laced with fentanyl.

Id. at 414.

We further noted that the Government "stated that it was prepared to prove, through the testimony of an expert witness, that a negative toxicology report was not unusual and that the evidence in fact showed that Nunn's death was drug induced." Id. at 415. We also gave great weight to the fact that Bowman, under oath, offered this proffer for his guilty plea to Count Four:

On around about August 15, 1999 a friend of mine named Mark Nunn came to my house to purchase some heroin. He was ill and sick and I gave him a bag. He went into my bathroom and used it in my bathroom and came out, and the results of using it, the dope, he OD'd.

Id.

On March 3, 2005, Bowman timely filed a § 2255 motion, raising six grounds for relief, including the two grounds on which we granted a COA. Bowman attached to his motion an affidavit from Dr. Daniel Spitz, Chief Medical Examiner of Macomb County, Michigan.

5

Based upon a reading of the autopsy and toxicology reports, Dr. Spitz "found no evidence" that drugs caused or contributed to Mark Nunn's death and, instead, opined that Nunn died from cardiac arrhythmia. (J.A. at 96-97.) On September 15, 2005, acting upon the Government's motion, the district court granted summary judgment against Bowman. We initially granted Bowman a COA to pursue his claim relating to Count Four, but later expanded the COA to include the claim relating to Count One. We will address each in turn.

## II.

We review de novo the district court's legal conclusions regarding Bowman's § 2255 motion, United States v. Brown, 155 F.3d 431, 434 (4th Cir. 1998), and its factual findings for clear error. United States v. Roane, 378 F.3d 382, 395 (4th Cir. 2004). We are permitted to affirm the district court's grant of summary judgment in favor of the Government "on any legal and factual basis fairly presented in the district court." United States v. Hopkins, 268 F.3d 222, 224 (4th Cir. 2001) (internal quotation marks omitted).

### A. Count Four

Bowman first contends that there was an insufficient factual basis to support his guilty plea to Count Four of the indictment, such that the district court committed error in accepting the plea. In support of this argument, Bowman points us to the original

6

toxicology report, Dr. Spitz's expert report, and the fact that Mark Nunn's life insurance company paid out a claim even though it included an exclusion for drug overdoses. Bowman, however, has an extremely high hurdle to overcome on this claim: procedural default. Because Bowman could have raised the absence of a factual basis supporting his plea on direct appeal, see United States v. Mastrapa, 509 F.3d 652 (4th Cir. 2007) (vacating entry of guilty plea on direct appeal where defendant "did not admit the necessary mens rea before entering his plea and the record contained no factual basis to support that element of the offense"), he has procedurally defaulted this claim. Accordingly, "[i]n order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, [Bowman] must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Id. at 493. A showing of cause and actual prejudice may be excused if the movant can show actual innocence of the crime. Sawyer v. Whitley, 505 U.S. 333, 339 (1992). "Typically, to establish factual innocence a petitioner must demonstrate actual

7

factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted." Mikalajunas, 186 F.3d at 494. A movant must meet this burden with "clear and convincing evidence." Id.

Bowman claims that, because his appellate counsel was ineffective, he can show cause for his procedural default. "To establish cause for [his] default based upon ineffective assistance of counsel, [Bowman] must show that [his] attorney['s] performance fell below an objective standard of reasonableness and that [he] suffered prejudice as a result." Id. at 493. "Counsel's failure to pursue a basis for appeal by reason of a mere miscalculation of the likelihood of success does not constitute constitutionally ineffective representation." Id. Applying this standard, Bowman cannot show his appellate counsel was ineffective in failing to raise this claim on direct appeal. In our earlier opinion we noted that Bowman, under oath, admitted his guilt to Count Four and failed to "proffer[] any reason why the government's proposed testimony explaining the [absence of heroin or fentanyl in the toxicology] report would be false or irrational." Bowman I, 348 F.3d at 414. Given this conclusion, it is difficult to see how Bowman's appellate counsel was ineffective; his failure to bring this claim was not even a miscalculation given our conclusion regarding the factual basis supporting Bowman's plea on Count Four.

8

Nor can Bowman show his actual innocence by clear and convincing evidence. Indeed, Bowman has fallen far short of this demanding burden. None of Bowman's "new" evidence explains how the Government's alternate theory, which was to be proffered by an expert who actually viewed Nunn's body, was "false or irrational." Id. at 414. As the district court properly noted, Dr. Spitz's affidavit "adds little to the findings" in this case, given that the original toxicology report showed an absence of drugs in Nunn's system.

Thus, because Bowman has procedurally defaulted his claim that there was no factual basis for his guilty plea to Count Four, and because Bowman cannot show either that cause and actual prejudice excuses this default or that he is actually innocent, the district court was correct to grant summary judgment in favor of the Government.

## B. Count One

Bowman next contends that, during his initial Rule 11 colloquy, the district court committed error by failing to inform him that drug quantity is an element of the offense and that, absent such error, he would not have pleaded guilty to Count One. Bowman did not raise this claim on direct review, so it, too, is procedurally defaulted. United States v. Sanders, 247 F.3d 139, 144-46 (4th Cir. 2001). Thus, Bowman must again meet the cause and actual prejudice standard. Moreover, in deciding if any error

9

actually prejudiced Bowman, we note that violations of Rule 11 are subject to harmless error, such that we may grant Bowman relief on this claim only if the Rule 11 violation "affected the defendant's substantial rights."  United States v. Defusco, 949 F.2d 114, 117 (4th Cir. 1991).

Without delving into whether Bowman can show cause for his procedural default, we simply conclude that, because any error during Bowman's Rule 11 colloquy could not have affected Bowman's substantial rights, Bowman cannot show actual prejudice excusing his procedural default.  Bowman admitted during the colloquy to his involvement in distributing more than a kilogram of heroin, and we noted in our earlier opinion that the Government had put forth one witness who "testified to buying 3000-4000 'bags' of heroin from Bowman through daily transactions over a period of years."  Bowman I, 348 F.3d at 415.  Indeed, "other witnesses testified in laborious detail about hundreds of transactions over a period of four years, involving the sale of thousands of bags of heroin."  Id.  Because any error would not affect Bowman's substantial rights, he cannot show actual prejudice and the district court correctly granted summary judgment in favor of the Government on this claim.

III.

In sum, Bowman's § 2255 motion in many ways simply recasts arguments we considered in <u>Bowman I</u>.  Accordingly, and for the aforementioned reasons, the district court's grant of summary judgment in favor of the Government is hereby

<u>AFFIRMED</u>.