**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-4085**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DONNELL WILLIAMSON, a/k/a Anthony Thomas,

Defendant - Appellant.

**No. 16-4114**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TED DUCKETT,

Defendant - Appellant.

Appeals from the United States District Court for the District of Maryland, at Greenbelt. Paul W. Grimm, District Judge.  (8:13-cr-00626-PWG-2; 8:13-cr-00626-PWG-1)

Submitted:  June 30, 2017                           Decided:  July 12, 2017

Before MOTZ, KING, and AGEE, Circuit Judges.

Affirmed by unpublished per curiam opinion.

David W. Lease, SMITH, LEASE, GOLDSTEIN, LLC, Rockville, Maryland; Kevin J. McCants, MCCANTS FIRM, Washington, D.C., for Appellants. Rod J. Rosenstein, United States Attorney, Mara V.J. Senn, Special Assistant United States Attorney, Thomas M. Sullivan, Assistant United States Attorney, Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Donnell Williamson, Ted Duckett and Maruice Foster[1] were charged in a superseding indictment with: Hobbs Act conspiracy, 18 U.S.C. § 1951(a) (2012) (Count One); conspiracy to possess with intent to distribute five kilograms or more of cocaine, 21 U.S.C. § 846 (2012) (Count Two); conspiracy to possess a firearm in furtherance of a drug trafficking crime and a crime of violence, 18 U.S.C. § 924(o) (2012) (Count Three); and possession of a firearm in furtherance of a drug trafficking crime and a crime of violence, 18 U.S.C. § 924(c) (2012) (Count Four).  A second superseding indictment charged Duckett and Foster with these offenses and possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1) (2012) (Count Five).   The charges related to the defendants' participation in a reverse sting operation involving the theft of cocaine from a fictitious "stash house."

Pursuant to a written plea agreement, Williamson pled guilty to Counts Two and Four.  He was sentenced to 138 months on Count Two and 60 months, consecutive, on Count Four.  Duckett pled guilty to the five offenses and was sentenced to 180 months in prison.  Williamson and Duckett appeal, each raising two issues.  We affirm.

I

Williamson first contends that, because he had a valid entrapment defense, the district court erred when it denied his motion to withdraw his guilty plea.   We conclude

---

[1] Foster was acquitted and is not a party to this appeal.

that the district court did not abuse its decision in denying the motion. *See United States v. Nicholson*, 676 F.3d 376, 383 (4th Cir. 2012).

A defendant does not have an absolute right to withdraw a guilty plea. *United States v. Bowman*, 348 F.3d 408, 413 (4th Cir. 2003); *United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991). Rather, after the court accepts a guilty plea, but before sentencing, a defendant may withdraw his plea if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The "burden of showing a fair and just reason for withdrawal" of the plea rests with the defendant. *United States v. Ubakanma*, 215 F.3d 421, 424 (4th Cir. 2000). We have developed a nonexclusive list of issues to consider in determining if a defendant has met his burden:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether [the] defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

*Moore*, 931 F.2d at 248.

"The most important consideration in resolving a motion to withdraw a guilty plea is an evaluation of the Rule 11 colloquy. . . ." *Bowman*, 348 F.3d at 414. If the Rule 11 proceeding was properly conducted, "a strong presumption that the plea is final and binding" attaches. *Nicholson*, 676 F.3d at 384 (internal quotation marks omitted). "[A] properly conducted Rule 11 . . . colloquy leaves a defendant with a very limited basis upon which to have his plea withdrawn." *Bowman*, 348 F.3d at 414. Here, our review of

4

the Rule 11 transcript discloses that the district court fully complied with the Rule and that Williamson voluntarily and knowingly entered his plea.

Turning to the second *Moore* factor-whether the defendant credibly asserted his legal innocence, Williamson claimed in his motion to withdraw that he was entrapped. We conclude, as did the district court, that the entrapment defense was unavailable to Williamson and that he did not credibly assert his legal innocence.

Entrapment "has two elements: (1) government inducement of the crime and (2) the defendant's lack of predisposition to engage in the criminal conduct." *United States v. Ramos*, 462 F.3d 329, 334 (4th Cir. 2006). The defense uses a burden-shifting scheme, where the defendant bears the "initial burden of presenting evidence that the government induced him to commit the crime." *United States v. Jones*, 976 F.2d 176, 179 (4th Cir. 1992). Once the defendant meets his burden, the burden shifts to the government to establish the defendant's predisposition beyond a reasonable doubt. *Id.* Thus, even if the government did induce a defendant to commit a crime, the defense of entrapment fails if the government can prove predisposition. *United States v. Squillacote*, 221 F.3d 542, 569 (4th Cir. 2000).

"The government may meet its burden by demonstrating the defendant's ready response to the inducement offered." *Jones*, 976 F.2d at 179. "While such a response after lengthy efforts by the government to induce the commission of a crime is not sufficient," *id.* at 179-80, the government may carry its burden so long as it "show[s] that the defendant is of a frame of mind such that, once his attention is called to the criminal opportunity, his decision to commit the crime is the product of his own preference and

5

not the product of government persuasion." *Id.* at 180 (internal quotation marks omitted). "[P]redisposition [must] be viewed at the time the government agent first approached the defendant," but "inferences about that predisposition may be drawn from events occurring after the two parties came into contact." *United States v. Garcia*, 182 F.3d 1165, 1169 (10th Cir. 1999).

The record establishes that an undercover agent approached Duckett about participating in the robbery, and Duckett then recruited Williamson and Foster. Williamson's will was clearly not overborne; to the contrary, he was an active planner and willing participant in the offenses. For example, during a meeting with the agent, Williamson asked whether the agent wanted people in the stash house to "stay alive." He also confirmed particulars of the robbery such as the number of guards who would be protecting the drugs and where a guard might keep his weapon.

The next two *Moore* factors favor the Government. First, the relevant delay was significant. Williamson entered his plea on November 13, 2014, Foster was acquitted on February 27, 2015, Williamson contacted his lawyer about withdrawing his plea a few days after Foster's acquittal, and his formal motion to withdraw was filed on August 5, 2015. Assuming a delay of slightly more than three months (the time between the Rule 11 colloquy and Williamson's contacting his lawyer about withdrawing the plea), the delay was significant. *See United States v. Craig*, 985 F.2d 175, 178 (4th Cir. 1993) (holding that eight-week delay between plea and motion to withdraw "clearly militate[s] against withdrawal"); *Moore*, 931 F.2d at 248 (six-week delay is "long"). Second, Williamson had the close assistance of counsel. Given his assurances to the court at his

6

Rule 11 hearing that he was completely satisfied with counsel and had had adequate opportunity to consult with his lawyer, this *Moore* factor weighs against Williamson.

The remaining two factors, prejudice to the Government and inconvenience to the district court, favor Williamson. However, on balance, the *Moore* factors weigh against permitting Williamson to withdraw his plea. We hold that the district court did not abuse its discretion in denying Williamson's motion to withdraw his plea.

II

Williamson next claims that his offense level was erroneously enhanced by two levels based obstruction of justice. *See U.S. Sentencing Guidelines Manual* § 3C1.1 (2014). The enhancement applies if the sentencing court finds "that the defendant (1) gave false testimony; (2) concerning a material matter; (3) with willful intent to deceive." *United States v. White*, 810 F.3d 212, 229-30 (4th Cir.) (internal quotation marks omitted), *cert. denied*, 136 S. Ct. 1833 (2016). The adjustment is appropriate when a defendant "willfully . . . attempt[s] to obstruct or impede[] the administration of justice." USSG § 3C1.1. To apply the adjustment based on perjury, *see* USSG § 3C1.1 cmt. n.4(F), the district court must find by a preponderance of the evidence that the defendant gave "false testimony concerning a material matter with the willful intent to provide false testimony." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). We review the imposition of an obstruction of justice enhancement for clear error. *United States v. Andrews*, 808 F.3d 964, 969 (4th Cir. 2015).

Williamson testified at the hearing on his motion to withdraw his guilty plea that several statements he made under oath at the Rule 11 hearing were untrue. He testified

that he had given false testimony with respect to the voluntariness of his plea, his satisfaction with counsel, and the accuracy of the Statement of Facts. The untrue statements were material because they went to the voluntariness of the plea and the fact of his guilt, and they were made with the willful intent to deceive. We conclude that the district court did not clearly err in applying the enhancement.

## III

Duckett pled guilty on February 18, 2015. On February 17, 2016, he moved to dismiss the indictment based on selective enforcement, arguing that the prosecution was motivated by racial animus. The United States replied that the motion was untimely under Fed. R. Crim. P. 12(b)(3). Duckett contends that the district court erred in denying the motion.

A motion claiming selective prosecution "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(A)(iv). To demonstrate good cause that would excuse a delay in raising a selective enforcement claim, Fed. R. Crim. P. 12(c)(3), the defendant must identify "material evidence to support the[] claim [of selective enforcement] that was not available before trial [or prior to entry of the guilty plea]." *United States v. Whitfield*, 649 F. App'x 192, 196 (3rd Cir. 2016), *cert. denied*, 137 S. Ct. 1063 (2017).

Duckett waited one year after entering his guilty plea to assert selective enforcement. He did not offer a reason for the delay in his motion or in his appellate brief. We conclude that the district court properly denied the motion.

8

IV

During a hearing on a motion to dismiss the indictment, Duckett's attorney, Assistant Federal Public Defender Amy Fitzgibbons, advised the court that she had a concern about her continued representation of Duckett, and she requested an attorney inquiry hearing. At issue was Fitzgibbons' communication with Duckett about plea agreements that were extended to him.[2] Following a hearing that afternoon, the district court determined that it was unnecessary to appoint substitute counsel. Duckett contends that the court's ruling was incorrect.

"Our review of denial-of-substitution claims has focused on . . . (1) the timeliness of the motion; (2) the adequacy of the court's subsequent inquiry; and (3) whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense." *United States v. Smith,* 640 F.3d 580, 588 (4th Cir. 2011) (internal quotation marks omitted). "As to that last inquiry, a total lack of communication is not required[.] Rather[,] an examination of whether the extent of the breakdown prevents the ability to conduct an adequate defense is the necessary inquiry." *Id.* (internal quotation marks and bracket omitted). Thus, our concern is "not with the

---

[2] The Government extended a plea offer to Duckett that expired on November 6, 2014. The expiration date was extended until November 14, 2014, so that Duckett could consider the plea agreement of codefendant Williamson, which was signed on November 10, 2014. Duckett did not accept the offer. On December 18, 2014, Duckett and Fitzgibbons met, and Duckett expressed interest in reviving the agreement. Fitzgibbons, who was trying to obtain the original plea offer, told Fitzgibbons that the offer was still available. However, her negotiations were unavailing, and, on January 13, 2015, she and Duckett met to discuss a second, less favorable plea offer.

indigent defendant's freedom of choice or . . . whether the attorney and his client have a meaningful relationship," but on whether "a breakdown of attorney-client communication [is] so great that the principal purpose of the appointment—the mounting of an adequate defense incident to a fair trial—has been frustrated." *Id.* (internal quotation marks and citation omitted). We review for abuse of discretion the denial of a motion for substitute counsel. *United States v. Horton*, 693 F.3d 463, 466 (4th Cir. 2012).

With respect to the first factor, there was no formal motion; rather, Fitzgibbons expressed her belief that an inquiry would be prudent. The hearing was conducted the day Fitzgibbons brought the matter to the court's attention, and three weeks before trial was scheduled to begin. Addressing the second factor, there is no question that the court conducted an adequate inquiry into the need for substitute counsel. Both Duckett and Fitzgibbons testified, and the court had before it at least one relevant document—the original plea offer.

Finally, the court correctly determined that there was not a breakdown in communication such that Fitzgibbons could not have mounted an adequate defense. Fitzgibbons testified that she had spent between 80 and 120 hours working on the case. Among other things, she had reviewed evidence, assembled criminal history documents, met with Duckett on multiple occasions, filed motions, responded to the Government, and participated in motions hearings. She informed the court that she was prepared to represent Duckett at trial. Duckett's only concern with counsel's representation was that counsel informed him in December that an offer that had expired in November was still

10

in play, and, as it turned out, the United States was unwilling to revive the offer. We hold that the district court's refusal to substitute counsel was not an abuse of discretion.

V

We therefore affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*