PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

v.

LESTER NICHOLSON,

      *Defendant-Appellant.*

No. 11-4531

Appeal from the United States District Court
for the District of South Carolina, at Anderson.
Henry F. Floyd, District Judge.
(8:10-cr-00725-HFF-1)

Argued: March 21, 2012

Decided: April 18, 2012

Before DUNCAN, KEENAN, and DIAZ, Circuit Judges.

Affirmed by published opinion. Judge Duncan wrote the opinion, in which Judge Keenan and Judge Diaz joined.

## COUNSEL

**ARGUED:** Jessica Ann Salvini, SALVINI & BENNETT, LLC, Greenville, South Carolina, for Appellant. William Jacob Watkins, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee. **ON BRIEF:** William N. Nettles, United States Attorney, Colum-

bia, South Carolina, David C. Stephens, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee.

---

## OPINION

DUNCAN, Circuit Judge:

Appellant Lester Nicholson was indicted for fraudulently obtaining benefits under the Federal Employment Compensation Act ("FECA"). Nicholson pleaded guilty at a plea hearing, during which the district court conducted a colloquy pursuant to Federal Rule of Criminal Procedure 11.

Subsequently, Nicholson sought to withdraw his guilty plea, apparently because he received a letter stating that his government benefits would be terminated as a consequence of his conviction. The district court denied his motion to withdraw. It sentenced Nicholson to five years of probation and ordered him to make restitution payments.

On appeal, Nicholson contends that the district court failed to follow the mandates of Rule 11 by not advising him that his FECA benefits may be terminated as a result of his guilty plea. He further argues that the district court conducted an insufficient inquiry into how certain pain medication he was taking affected his competence to enter the guilty plea. Finally, Nicholson challenges the district court's denial of his motion to withdraw his guilty plea. For the reasons that follow, we affirm.

I.

A.

Nicholson was employed as a mail carrier by the United States Postal Service and suffered a job-related injury in 2001.

Sometime thereafter, he began receiving payments under the FECA. The Department of Labor's Office of Workers' Compensation Programs requires recipients of FECA benefits to annually submit a Form EN-1032, on which they are required to report, inter alia, their employment status during the previous 15 months. In June 2008, Nicholson began operating a for-profit restaurant. On July 10, 2008, he signed and submitted the Form EN-1032, stating that he had *not* been self-employed or involved in any business enterprise in the past 15 months. On November 12, 2008, during an interview with agents from the Department of Labor, Nicholson admitted that he had falsified his answers on the Form EN-1032.

B.

On July 13, 2010, a grand jury indicted Nicholson for violating 18 U.S.C. § 1920, which proscribes the use of false statements and/or fraud to obtain federal employees' compensation. During a plea hearing in the United States District Court for the District of South Carolina on December 22, 2010, Nicholson entered a plea of guilty to the indictment. At the outset of the plea hearing, the district court advised Nicholson that it would be asking him a series of questions to determine whether he was entering his plea freely, voluntarily, knowingly, and intelligently. During the plea hearing, Nicholson informed the court that he had earned an associate's degree. When asked whether he could read, write, speak, and understand the English language, Nicholson responded in the affirmative.

When the district court asked Nicholson whether he had taken any medication, drugs, or alcohol within the last 24 hours, he responded that he had taken "pain pills" during that time. J.A. 13. Upon receiving this information, the district court followed up by asking Nicholson to specify exactly what he had consumed. Nicholson responded, "Lortab, sir, for pain." *Id.* The district court advised Nicholson that such medication could affect his sobriety, and inquired whether he was

sober and understood what he was doing. Nicholson responded in the affirmative. The district court provided the government and Nicholson's counsel an opportunity to raise "any issue of competency," but neither party voiced any concerns. J.A. 14. The district court then found that Nicholson was competent for purposes of entering his guilty plea.

The colloquy continued. In response to questions from the court, Nicholson indicated that he was satisfied with his attorney's representation and affirmed that his lawyer had done everything Nicholson had asked him to do. The district court read the indictment to Nicholson and examined the elements of the § 1920 offense. It further advised him of the applicable penalty: "Penalty maximum is $250,000 fine, imprisonment up to five years, supervised release of three years and a special assessment of $100." J.A. 25. Nicholson acknowledged the elements and penalty. Nicholson also agreed with the government's factual bases for the plea.

After explaining the operation of the advisory Sentencing Guidelines, the district court asked Nicholson whether he was indeed guilty. Nicholson hesitated, whereupon the district court offered him a jury trial. Nicholson responded: "I understand that, sir. I got kids, so I take whatever thrown at me." J.A. 38. The district court stated: "No. The question is are you pleading guilty of your free will because you are guilty?" J.A. 38-39. Nicholson responded: "Yes, sir." J.A. 39.

## C.

Sometime in February 2011, Nicholson approached his counsel and asked that counsel research whether he could withdraw his guilty plea. Nicholson indicated to his attorney that he wished to withdraw his guilty plea because he had received a letter from the government terminating all future benefits and wages.

On March 27, 2011, Nicholson moved to withdraw his guilty plea pursuant to Rule 11(d). Nicholson argued that the factors set forth in *United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991), to be considered when determining whether a defendant should be allowed to withdraw his guilty plea,[1] compelled the conclusion that his guilty plea should be set aside. Specifically, Nicholson argued that his plea was not knowing and voluntary because "his physician had prescribed him pain medication that affected his judgment . . . [and] was interfering with his ability to reason." J.A. 47. Nicholson further contended that he credibly asserted his legal innocence, asserting that "he was ambivalent in his answers to the court's questioning and he wanted to assert his legal innocence." *Id.* Notably, at no point, either in his motion or the subsequent hearing, did Nicholson object to the court's failure to advise him during the plea colloquy regarding the potential loss of government benefits.

On April 27, 2011, the district court conducted a hearing regarding Nicholson's motion to withdraw his guilty plea. At its close, the district court concluded that based on the transcript and its recollection of Nicholson's demeanor and appearance, as well as the court's longstanding experience in similar situations, Nicholson entered his plea knowingly and voluntarily. The district court indicated that Nicholson was competent, telling him "And, sir, that day you were all there." J.A. 60. It further found that there was no evidence in the record at the time of the plea that Nicholson asserted his legal innocence. It further found that a two-month delay was too great a period of time, and that there was no evidence that Nicholson's lawyer was in any way incompetent. While recognizing that the government had not suggested that it would be prejudiced if Nicholson's motion were granted, the district court nevertheless found that allowing Nicholson to withdraw a "clear, knowing and voluntary plea . . . would be a waste of judicial resources and an inconvenience." J.A. 60.

---

[1]We discuss the factors set forth in *Moore* in depth in Part II.A.

At the conclusion of the hearing, the district court sentenced Nicholson to five years' probation, and further ordered that he make restitution payments to the Office of Workers' Compensation Programs.

## II.

On appeal, Nicholson contends that the district court failed to comply with the mandates of Rule 11 when it did not advise him of the possible termination of his FECA benefits as a result of his guilty plea.[2] He further argues that the district court conducted an insufficient inquiry into the effect of pain medication on his competence to enter the guilty plea. Finally, Nicholson challenges the district court's denial of his motion to withdraw his guilty plea. We address each contention in turn.

## A.

The first issue raised on appeal is whether the district court erred when it failed to advise Nicholson that his FECA benefits could be terminated as a result of his guilty plea. Because Nicholson did not preserve this challenge to the plea colloquy in the district court, we review it for plain error. "To establish plain error, the appealing party must show that an error (1) was made, (2) is plain (i.e., clear or obvious), and (3) affects substantial rights." *United States v. Strieper*, 666 F.3d 288, 295 (4th Cir. 2012) (quotation marks omitted). "Even if an appellant satisfies these elements, we may exercise our discretion to correct the error only if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotation marks omitted).

Rule 11 sets out the information a court is to convey to

---

[2]We refer to termination as a possibility because the record itself is unclear on this point. It neither contains the letter of termination, nor refers to the source of the Secretary of Labor's authority in this regard.

ensure that a defendant who pleads guilty understands the consequences of the plea. Fed. R. Crim. P. 11; *United States v. Gray*, 491 F.3d 138, 149 (4th Cir. 2007). "The Rule 11 colloquy is designed to provide a structure to protect the defendant against making an uninformed and involuntary decision to plead guilty and to protect the public from an unjust judgment of guilty when a public trial has not been conducted." *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003). Pursuant to the rule, a court must inform the defendant of and determine that he understands the mandatory minimum penalty provided by law, if any; the maximum possible penalty provided by law for the offense to which the plea is offered; and any applicable forfeiture. Fed. R. Crim. P. 11 advisory comm. note (1974 Amendment).

"For a guilty plea to be constitutionally valid, a defendant must be made aware of all the direct, but not the collateral, consequences of his plea." *Meyer v. Branker*, 506 F.3d 358, 367-368 (4th Cir. 2007) (quotation marks omitted). "Direct consequences have a definite, immediate and largely automatic effect on the range of the defendant's punishment. A consequence is collateral when it is uncertain *or beyond the direct control of the court.*" *Id.* at 368 (emphasis added) (quotation marks and citations omitted); *see also United States v. Gonzalez*, 202 F.3d 20, 27 (1st Cir. 2000), *abrogated on other grounds* by *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010) ("What renders a plea's effects collateral is not that they arise virtually by operation of law, but the fact that [the consequence] is not the sentence of the court which accepts the plea but of another agency over which the trial judge has no control and for which he has no responsibility." (quotation marks omitted)).[3] In *Appleby v. Warden*, 595 F.3d 532 (4th Cir.

_____

[3]*Gonzalez*, which concerned the immigration consequences of a plea, held both that the district court was not required to inform the defendant of such consequences under Rule 11, and that counsel's failure to advise the defendant did not constitute ineffective assistance of counsel. 202 F.3d at 24-28. It rested both holdings on the notion that deportation was a col-

2010), we specifically noted that courts have held that collateral consequences of a plea include the potential loss of federal benefits. *Id.* at 540.

Applying the foregoing principles, we hold that the loss of government benefits was a collateral consequence of Nicholson's plea, and that therefore the district court was not required to advise him of it pursuant to Rule 11. Under *Meyer*, it is dispositive that an individual or entity other than the district court was responsible for the termination of Nicholson's benefits. The district court had neither control nor responsibility over that decision. Thus, even assuming the validity of Nicholson's assertion that the loss of government benefits was a definite consequence of his plea,[4] it was nevertheless collateral because it was beyond the district court's

---

lateral consequence of a conviction. *Id.* In *Padilla*, the Court abrogated *Gonzalez* to the extent that it held that the Sixth Amendment does not require counsel to advise a defendant of the fact that "his plea carries a risk of deportation." 130 S. Ct. at 1486. The Court specifically declined to address "how to distinguish between direct and collateral consequences" of a guilty plea. *Id.* at 1481 n.8. *Padilla* also did not address district courts' obligations under Rule 11. Post-*Padilla*, at least one circuit has held that the decision did not alter the scope of a district court's obligations under Rule 11. *See United States v. Delgado-Ramos*, 635 F.3d 1237, 1239-41 (9th Cir. 2011).

> Because the defendant in *Padilla* raised only a Sixth Amendment claim, the Court had no occasion to consider the scope of a district court's obligation under Rule 11, whether a defendant's due process rights are violated if the court fails to inform him of the immigration consequences of his plea, or the continued viability of the distinction between direct and collateral consequences in the due process context.

*Id.* at 1240. The Advisory Committee on Criminal Rules has echoed that position, noting that "*Padilla* was based solely on the constitutional duty of defense counsel, and it does not speak to the duty of judges." Report of the Advisory Committee on Criminal Rules (Dec. 8, 2010).

[4]We note again that the record is devoid of any evidence with respect to the termination of Nicholson's benefits.

direct control. Notably, the only punishment imposed on Nicholson by the district court was five years' probation and restitution payments.

Because Nicholson has failed to establish that the district court erred, we need not consider the remaining prongs of the plain error standard.

B.

The second issue raised on appeal is whether the district court conducted a sufficient inquiry into Nicholson's competence to enter a guilty plea. We evaluate the sufficiency of the colloquy under the harmless error standard. *United States v. Damon*, 191 F.3d 561, 564 n.2 (4th Cir. 1999).

"Before a court may accept a guilty plea, it must ensure that the defendant is competent to enter the plea." *Id.* at 564. We have held that "the plea colloquy required by Rule 11 must be conducted with some flexibility." *Id.* at 565. When a response in a plea colloquy "raises questions about the defendant's state of mind, the court must broaden its inquiry to satisfy itself that the plea is being made knowingly and voluntarily." *Id.* With a medicated defendant, a court should ascertain the effect, if any, of the medication on his ability to enter a knowing and voluntary plea. *Id.* For medication to render a defendant incompetent, the medication must have so impaired his mental faculties that he was "incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights, and of realizing the consequences of his plea." *Id.* (quoting *United States v. Truglio*, 493 F.2d 574, 578 (4th Cir. 1974)).

In *Damon*, the defendant informed the court that he was "currently" under the influence of an antidepressant medication, and his lawyer added that "impaired judgment" was listed as a side effect. *Id.* We observed:

> This information should have raised a red flag for the district court as to Damon's competence to plead guilty. However, the district court simply continued with the routine Rule 11 colloquy without following up on the drug information or making any further inquiry into Damon's mental state or the possibility that his judgment could be impaired.

*Id.* We held that "[t]he district court erred when it failed to inquire about what effect, if any, Damon's medication had on his ability to make a voluntary plea and to understand the consequences." *Id.* We therefore remanded to the district court for a competency determination. *Id.* at 566. We further stated: "Although we leave the details of the inquiry to the district court, we expect, for example, that the court will want to examine the medical records to determine the type, amount, and schedule of medication taken by Damon before he entered his plea." *Id.*

On these facts, we conclude that the district court conducted a sufficient inquiry into Nicholson's competence. When the district court learned that Nicholson had taken "pain pills" during the preceding 24 hours, it asked Nicholson to specify exactly what he had consumed. J.A. 13. The district court followed up by informing him that the medication in question could affect his sobriety. The court then probed further and asked whether Nicholson was sober and understood what he was doing. Nicholson responded in the affirmative. The court provided the government and defense counsel an opportunity to raise issues about the competency of the defendant's guilty plea, but neither did. Thus, unlike *Damon*, where the district court failed to make any follow-up inquiry into the defendant's competence, here the district court asked follow-up questions, the responses to which raised no red flags.[5] As

---

[5]Relying on *Damon*, 191 F.3d at 564, Nicholson contends that the district court erred because it did not inquire into how much of the medication he had ingested, whether or not the medication affected his ability to

such, the district court's inquiry into Nicholson's competence was sufficient.

## C.

The final issue raised on appeal is whether the district court erred in denying Nicholson's motion to withdraw his guilty plea. Our review is for abuse of discretion. *United States v. Ubakanma*, 215 F.3d 421, 424 (4th Cir. 2000). "A district court abuses its discretion when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises." *United States v. Henry*, ___ F.3d ___, 2012 WL 745536, at *5 (4th Cir. Mar. 8, 2012).

Rule 11 "authorizes the withdrawal of a guilty plea before sentencing if 'the defendant can show a fair and just reason for requesting the withdrawal.'" *Bowman*, 348 F.3d at 413 (quoting Fed. R. Crim. P. 11(d)(2)(B)). "A defendant has no absolute right to withdraw a guilty plea, and the district court has discretion to decide whether a fair and just reason exists upon which to grant a withdrawal." *Id.* (quotations omitted). "The most important consideration in resolving a motion to withdraw a guilty plea is an evaluation of the Rule 11 collo-quy at which the guilty plea was accepted." *Id.* at 414. "Thus, when a district court considers the plea withdrawal motion, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *Id.* (quotation marks

---

think clearly, and/or whether or not he was experiencing any side effects. We find this argument unpersuasive. Although Nicholson is correct that the *Damon* court expected the district court to conduct a detailed inquiry upon remand, it did so *only* after it determined that Damon's answers to the district court's questions raised a "red flag." 191 F.3d at 565. Here, by contrast, the district court followed up with additional questions, the answers to which assuaged its concerns. Accordingly, because Nichol-son's answers raised no red flags, there was no need for the district court to conduct a detailed inquiry into Nicholson's medical records.

omitted). "A voluntary and intelligent plea of guilty is an admission of all the elements of a formal criminal charge and constitutes an admission of all material facts alleged in the charge. Accordingly, a properly conducted Rule 11 guilty plea colloquy leaves a defendant with a very limited basis upon which to have his plea withdrawn." *Id.* (quotation marks and alterations omitted). Indeed, it "raise[s] a strong presumption that the plea is final and binding." *Id.* (quotation marks omitted).

"When considering a defendant's motion to withdraw his guilty plea, the court may also consider other circumstantial factors that relate to whether the defendant has advanced a fair and just reason." *Id.* at 414. As previously mentioned, in *Moore*, we articulated the following, nonexclusive list of factors for consideration in deciding a withdrawal motion: (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary; (2) whether the defendant has credibly asserted his legal innocence; (3) whether there has been a delay between the entering of the plea and the filing of the motion to withdraw the plea; (4) whether the defendant had the close assistance of competent counsel; (5) whether withdrawal will cause prejudice to the government; and (6) whether it will inconvenience the court and waste judicial resources. 931 F.2d at 248.

As we have already noted, the district court conducted the Rule 11 proceeding appropriately; it advised Nicholson of the consequences of his plea and conducted a sufficient inquiry into whether he was competent to enter the plea. Accordingly, there is a strong presumption that Nicholson's plea is valid and binding.

Turning to the *Moore* factors, we conclude that they do not provide a fair and just reason for withdrawing Nicholson's guilty plea. The first factor does not favor Nicholson: he has failed to establish that his medication rendered his plea unknowing or involuntary. As to the second factor, Nicholson

has not credibly asserted his innocence: he admitted under oath that he filed a false form, informed the court that he was pleading guilty because he was indeed guilty, and admitted guilt when confronted by law enforcement. With regard to the third factor, Nicholson concedes that he delayed in filing the motion to withdraw the plea, but contends that the delay was in part due to trial counsel's reluctance to file the motion. Even were we to accept that explanation, the fact remains that Nicholson pleaded guilty on December 22, 2010, but did not approach his attorney about filing a motion until February 2011. In *Moore*, we described a six-week period between the plea and the filing of the motion as a "long delay[ ]." 931 F.2d at 248. As to the sixth factor, we agree with the district court that a trial in this case would be a waste of judicial resources and time, particularly given Nicholson's repeated admission of guilt.

That some of the factors conceivably cut in Nicholson's favor does not alter our conclusion. We assume, without deciding, that the fourth factor favors Nicholson. He argues that he was not afforded effective representation because his trial counsel failed to advise him that his guilty plea would result in his loss of all his government benefits. With respect to the fifth factor, we note that the government has not argued that withdrawal will cause prejudice to the United States. However, these two factors are insufficient to overcome the strong presumption that Nicholson's plea is final and binding. Nor do they show a fair and just reason for requesting the withdrawal. Thus, we have no hesitation in concluding that the district court, after carefully considering the judicially recognized factors constraining its exercise of discretion, appropriately denied Nicholson's motion.

### III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.