**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-4685

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

NYKEEM TAYQUAN ODOM,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge.  (5:20-cr-00149-D-1)

Submitted:  October 13, 2022                    Decided:  January 4, 2023

Before NIEMEYER and RUSHING, Circuit Judges, and KEENAN, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** Helen Celeste Smith, Apex, North Carolina, for Appellant.  Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, Kristine L. Fritz, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After the defendant Nykeem Odom pleaded guilty to possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) and § 924, but before his sentencing, he filed a motion to withdraw his guilty plea, alleging that his counsel had provided ineffective assistance and that he was in fact innocent. The district court conducted an evidentiary hearing and then denied Odom's motion, making extensive factual findings, including credibility determinations. At Odom's sentencing hearing, the court applied two sentencing enhancements to which Odom objected. The court then sentenced Odom to 96 months' imprisonment.

On appeal, Odom challenges the district court's denial of his motion to withdraw his guilty plea and its application of the two sentencing enhancements. We affirm.

I

After Odom was indicted, the government provided his counsel with an unsolicited proposed plea agreement offering that it would not press certain sentencing enhancements in exchange for Odom's guilty plea, cooperation, and waiver of appeal rights. The government explained to counsel that it wanted Odom's testimony to investigate gang activity, since Odom was a member of the Crips gang. On receiving the proposal, Odom's counsel "explained the plea agreement to Odom," as the district court found, "including the charge, the elements [of the crime], the maximum penalty, and the plea agreement's terms. [Counsel] also explained to Odom that the proposed plea agreement required [him] to cooperate (i.e., 'snitch')." After counsel explained to Odom the other terms of the

2

agreement and reviewed with him the sentencing process and possibilities, Odom told his counsel, as the court found, that "he did not want to snitch, give up his appellate rights, or plead guilty pursuant to the plea agreement. Rather, Odom decided to plead guilty without a plea agreement." Counsel so advised the government, telling the Assistant U.S. Attorney that Odom had rejected the proposed plea agreement.

On September 18, 2020, Odom's counsel received a telephone call from a member of Odom's family who stated that the owner of the firearm found in the vehicle Odom was driving had sent an affidavit to counsel's office, stating that she owned the gun; that she mistakenly left the gun in the car; that she mistakenly forgot to retrieve the gun; that Odom was driving his mother's car on July 9, 2019; and that Odom had no knowledge that the gun was in the car. When, however, counsel asked the family member for the affidavit, none was provided then or at any time while he was representing Odom.

Three days after this phone call, counsel met with Odom to discuss the new information. As the district court found about this meeting, counsel told Odom that "gun ownership was not a required element of the charged offense, but if Odom had no knowledge of the gun, then that would be a defense to the section 922(g)(1) charge in the indictment because the United States had to prove that Odom knowingly possessed the gun." Counsel then invited Odom to think about whether he wanted to plead *not* guilty and allow counsel time to investigate the information. Odom, however, responded "no" and told counsel that he wanted to proceed with the guilty plea at the arraignment scheduled for September 24, 2020. As the district court found, "[a]t no time during this conversation or at any other time during the attorney-client relationship did Odom ever tell [counsel]

3

that he was innocent of the section 922(g) charge in the indictment (i.e., that he did not knowingly possess the firearm in the indictment or that he did not know about the firearm in the car). During the attorney-client relationship, Odom never provided [counsel] with any evidence of his innocence."

Odom's arraignment took place on September 24, 2020, and Odom, following a thorough plea colloquy, pleaded guilty to the firearms charge. During the colloquy, the presiding judge advised Odom of the elements of the offense and what the government had to prove, stating:

> Mr. Odom, I want to review the elements of the offense to which it's anticipated you'll plead guilty. Again, that's possession of a firearm by a felon. The elements of that offense are that in your case, on July 9, 2019, . . . *you knowingly possessed a firearm*. At the time you possessed the firearm you knew you had been convicted of a crime punishable by a term of imprisonment exceeding one year and that the possession of the firearm was in or affecting commerce. Mr. Odom, do you understand the elements of that offense?

(Emphasis added). Odom replied that he did. Thereafter, the government proffered the facts of the offense conduct, stating:

> [O]n July the 9th of 2019, the Raleigh Police Department Officer Quesada was conducting proactive patrol in the area of Millbrook and Six Forks Road here in Raleigh, North Carolina, located here in the Eastern District of North Carolina.
>
> While on patrol, Officer Quesada noticed a car, which was being driven by the Defendant, which he visually estimated to be speeding. He ran the license plate for the car, and it came back to an address associated with Defendant. He was able to see that the Defendant was driving the car and was able to run the Defendant's record and realized that there was also an outstanding warrant out of Nash County for this particular Defendant. He ended up activating his blue lights and initiated a traffic stop for the speeding violation.

4

Mr. Odom stopped his car near Cedarhurst Drive and Indian Trail Drive in Raleigh. As Officer Quesada was approaching the vehicle, he identified himself. He was also in a marked Raleigh PD unit as well. He went up to the vehicle and asked Mr. Odom to step out of the car. The Defendant questioned him as to why he was asking him to step out of the car. He then was able to start smelling marijuana. He saw the Defendant reaching for the gearshift, so Officer Quesada then opened the door. The Defendant then kicked the officer in the chest in order to get him away from the vehicle and then fled the scene.

Pursuant to [a Raleigh Police Department] policy, Officer Quesada did not chase after Mr. Odom given that he was in a neighborhood when this case began or when the car started fleeing. The car ended up wrecking at the intersection of Orleans Place and Quail Hollow Drive, after Mr. Odom wrecked his car into another vehicle. He then fled the scene. Witnesses told the police that they had observed the Defendant flee the car.

They then, in plain view, noticed that there was a bottle of tequila that was open in the vehicle. Also smelling marijuana, they did a search of the car and located a small bag of marijuana in the center console as well as a Taurus TH40 semiautomatic pistol that was in the side well of the car by the pedals.

The recitation concluded with the proffer that Odom had previously been convicted of a felony and that the pistol seized from the vehicle had traveled in interstate commerce. Odom was advised that if he pleaded guilty and the court accepted his guilty plea, he would "not be able to withdraw it at a later date." After Odom expressed his understanding of that fact, he pleaded guilty. The court followed up, "Did you, in fact, commit the offense charged in the count?" Odom replied, "Yes, sir." And the court then posed one further question, "And are you pleading guilty today of your own free will because you are, in fact, guilty?" Odom responded, "Yes, sir." The court thereafter accepted Odom's plea as freely and voluntarily given.

5

During the period thereafter, after a draft presentence report had been prepared but before sentencing, Odom wrote the district court that he was dissatisfied with his counsel and wanted new counsel, complaining about the level of communication with counsel and counsel's inability to "find a common ground and/or solution to my concerns." His counsel promptly thereafter filed a motion to withdraw, stating that "a functional and effective attorney-client relationship is no longer possible." The court granted the motion, and new counsel promptly entered her appearance on behalf of Odom.

Then, Odom filed a motion to withdraw his guilty plea, based on (1) the alleged deficient level of communication between former counsel and Odom and (2) Odom's purported innocence based on the information received from a family member that the firearm in Odom's vehicle belonged to someone else and was inadvertently left in the vehicle, thus unwittingly implicating Odom. He claimed in his motion that former counsel (1) failed to fully explain the government's proposed plea agreement; (2) failed to identify and explain potential sentencing enhancements; and (3) failed to pursue the affidavit presented by the owner of the firearm, "which completely disproved an essential element of the offense, i.e., the knowing possession of a firearm." Attached to the motion was an affidavit from Odom in which he supported the claims made in the motion. He included the statement, "I did not know the gun was in the car."

The district court conducted an evidentiary hearing on Odom's motion to withdraw his guilty plea on July 23, 2021, following which it issued a thorough 28-page opinion and order denying Odom's motion to withdraw. In its opinion, the court properly recognized the standard for withdrawal of a guilty plea — that the defendant must "show a fair and

just reason for requesting the withdrawal." (Quoting Fed. R. Crim. P. 11(d)(2)(B)). The court also appropriately recognized that it should consider six factors in determining whether to grant such a motion, as identified in *United States v. Nicholson*, 676 F.3d 376, 384 (4th Cir. 2012), and *United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991). It then addressed those factors in light of the facts. *First*, it found that Odom had "not presented credible evidence that his guilty plea was not knowing or voluntary." *Second*, it found that "Odom ha[d] not credibly asserted his legal innocence." With regard to that factor, the court conducted an extensive review of the evidence, detailing each step and fact that supported Odom's knowledge of the presence of the gun and ultimately concluding, "Odom's claim in his declaration that he told [counsel] 'that I did not know the gun was in my mother's car on July 9, 2019' is untrue and perjurious." In addition, the court found that the information submitted by a friend of Odom's family did "not constitute credible evidence of Nykeem Odom's innocence," finding numerous inconsistencies. *Third*, the court concluded that the delay in filing the motion for withdrawal of his plea was "long" and did not "favor permitting withdrawal." *Fourth*, the court found that Odom had "the close assistance of competent counsel" in entering his guilty plea. On this finding, the court again detailed extensively the relationship between Odom and his counsel and the advice counsel had provided over the period before Odom entered his guilty plea. *Fifth*, the court concluded that the withdrawal of the guilty plea would "prejudice the United States." And *sixth* and finally, the court noted that "withdrawal will inconvenience the court and waste judicial resources."

7

We have carefully reviewed the arguments of counsel and the record in this case, and, substantially for the reasons given by the district court, *see United States v. Odom*, 5:20-cr-149-D (E.D.N.C. Aug. 23, 2021), we affirm the district court's denial of Odom's motion to withdraw his guilty plea.

II

Odom also claims that the government violated his due process rights by failing to provide him with exculpatory evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), that the evidence would have assisted him in making his decision whether to plead guilty. He did not, however, make this constitutional argument to the court in his motion to withdraw his guilty plea or at the hearing. Rather, he made it for the first time at sentencing, interposing it as an objection. The district court said that it did not see the argument's connection with the motion to withdraw and saw no basis to invalidate Odom's guilty plea based on the alleged *Brady* violation. We affirm.

The facts relevant to the withdrawal of the plea agreement related to insufficient communication about the government's proposed plea agreement and the failure to investigate further the information received from the family about the gun ownership. Those facts and the issues relating to them were fully aired in briefing and at the evidentiary hearing, and none were supported by the evidence not yet seen by Odom when he pleaded guilty. And Odom has failed to demonstrate that the government's alleged discovery violations suggest in any way that his guilty plea was entered unknowingly.

III

Finally, Odom challenges the district court's application of sentencing enhancements under U.S.S.G. § 3A1.2(c)(1) (providing enhancement for assaulting a law enforcement officer during the commission of the offense) and § 3C1.1 (providing enhancement for obstruction of justice by providing materially false information to a judge). Odom claims that the district court's findings in applying the § 3A1.2(c)(1) enhancement represented an overstatement of his conduct, arguing that the physical contact with police officers, as shown in the video of the event, was hardly an assault and was incidental and minor. And on the obstruction of justice enhancement, he contends that his statement in his affidavit was not false, was not material, was not made to willfully obstruct justice, and was taken by the district court out of context.

The district court spelled out in detail the Guidelines requirements for both enhancements, and it made detailed findings of fact in connection with each. As to the conduct supporting the § 3A1.2(c)(1) enhancement, the court summarized:

> When the officer opened the door to get you out of the vehicle, you were reaching for the gear shifter and attempting to flee. There was a physical altercation where you assaulted the officer, and the officer did sustain lacerations on two of his fingers. The officer deployed pepper spray. You shifted the vehicle into gear and fled at a high rate of speed. You then crashed the car into a parked, unoccupied vehicle, but you certainly had extremely endangered the officer, as well as those in the subdivision.

And as to the conduct supporting the § 3C1.1 enhancement, the court relied on its earlier finding that the statement Odom made was "untrue and perjurious." The court explained at the sentencing hearing that "[counsel] testified that Odom never told him that [he did not

9

know the gun was in the car]; and that if he had made such a statement, he would have advised Odom to plead not guilty." The court further noted that it had "found [counsel] to be credible . . . and Odom's declaration to not be credible; i.e., patently false." The court went on to find Odom's false statement was material and willful, explaining why.

Having reviewed the arguments of counsel and the record in great detail, we find no error and affirm the sentence.

\* \* \*

Accordingly, the judgment of the district court is

AFFIRMED.