**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Edgar Sterling LEMASTER,
Defendant–Appellant.**

No. 04–6448.

United States Court of Appeals,
Fourth Circuit.

Argued: Feb. 1, 2005.

Decided: April 11, 2005.

**217**

**ARGUED:** Rick Bettan, Third Year Law Student, University of Virginia School of Law, Appellate Litigation Clinic, Charlottesville, Virginia, for Appellant. Steven Randall Ramseyer, Assistant United States Attorney, Office of the United States Attorney, Abingdon, Virginia, for Appellee. **ON BRIEF:** Neal Walters, University of Virginia School of Law, Appellate Litigation Clinic, Charlottesville, Virginia, for Appellant. John L. Brownlee, United States Attorney, Abingdon, Virginia, for Appellee.

Before WILKINSON, WILLIAMS, and TRAXLER, Circuit Judges.

Affirmed by published opinion. Judge WILLIAMS wrote the opinion, in which Judge WILKINSON and Judge TRAXLER joined.

**OPINION**

WILLIAMS, Circuit Judge:

Edgar Sterling Lemaster pleaded guilty to mail fraud under 18 U.S.C.A. § 1341 (West 2000) and was sentenced to 60 months' imprisonment. In his written plea agreement, Lemaster waived his right to attack his conviction and sentence collaterally. Nonetheless, Lemaster filed a motion under 28 U.S.C.A. § 2255 (West Supp. 2004) alleging that his counsel was constitutionally ineffective. The district court summarily concluded that Lemaster had knowingly and voluntarily waived his collateral-attack rights and dismissed Lemaster's motion. Lemaster now appeals, contending that his waiver was unknowing and involuntary or, in the alternative, that the district court should have held an evidentiary hearing on his motion. Because the allegations in Lemaster's motion tending to show that his plea agreement and waiver were unknowing and involuntary directly contradict his sworn statements during his Rule 11 colloquy and sentencing hearing, we affirm.

**I.**

Lemaster designed and perpetrated a relatively straightforward scheme to defraud coal and mining companies. Lemaster would contact the companies and solicit money for advertising space in a publication called the *Mine Safety Health Publication Calendar*. If the companies were interested, Lemaster would instruct them to mail a check to a private mailbox company as payment for the advertising. At Lemaster's instruction, the mailbox company would cash the checks and forward the

proceeds to him. Lemaster received funds from a large number of companies, but he produced few, if any, calendars.

After his fraud was discovered, Lemaster was indicted and pleaded guilty to mail fraud. Lemaster was sixty-six at the time of his arrest and holds a college degree. The written plea agreement contained, among other provisions, a waiver of Lemaster's rights to appeal and to attack his conviction and sentence collaterally. The waiver read as follows:

> WAIVER OF RIGHT TO APPEAL AND WAIVER OF RIGHT TO COLLATERALLY ATTACK
>
> I hereby waive my right of appeal as to any and all issues in this case, and consent to the final disposition of this matter by the United States District Court. In addition, I waive any right I may have to collaterally attack, in any future proceeding, my conviction and/or sentence imposed in this case.

(J.A. 48.) The transcript of Lemaster's Federal Rule of Criminal Procedure 11 proceedings contains the following exchanges between Lemaster, the prosecutor and the district court regarding Lemaster's understanding of the plea agreement:

> [Prosecutor]: Do you understand by signing this plea agreement you are agreeing that you are waiving any right you have to appeal?
>
> The Defendant: Yes.
>
> [Prosecutor]: And as to a collateral attack, you understand the same thing applies, that in the absence of the plea agreement you would have a right to file a collateral attack?
>
> The Defendant: Yes.
>
> [Prosecutor]: And do you understand by signing this plea agreement you're agreeing to waive that right?
>
> The Defendant: Yeah.
>
> . . . .

> The Court: All right. The plea agreement provides that you, you agree not to appeal this case or to collaterally attack the case. . . . [Y]ou have no right of appeal generally. And you have no right to collaterally attack the matter. You understand all that?
>
> The Defendant: Yes, sir.

(J.A. 70–76.) The court also sought to ascertain the voluntariness of Lemaster's plea:

> The Court: As far as you know the meaning of the word voluntary, what it means to you, do you consider that you're voluntarily entering into this plea of guilty?
>
> The Defendant: Yes, sir.
>
> . . .
>
> The Court: Have there been any threats or force applied to you in any way to compel you to plead guilty?
>
> The Defendant: No, sir.

(J.A. at 72–73.)

To further ensure the voluntariness of Lemaster's guilty plea, the court and the prosecutor questioned Lemaster on his satisfaction with his attorney in the following manner:

> [Prosecutor]: You're indicating in the plea agreement that you discussed the terms of the plea agreement and all matters pertaining to the charges against you with your attorney, and you're satisfied with your attorney and your attorney's advice; is that correct?
>
> The Defendant: Yes.
>
> [Prosecutor]: You're indicating you have made known to the court at any time any dissatisfaction you may have with your attorney's representation?
>
> The Defendant: Yes.
>
> [Prosecutor]: You agree that you'll let the court know no later than at the time of sentencing any dissatisfaction or com-

plaints you have with your attorney's representation?

**The Defendant:** Yes.

**[Prosecutor]:** Mr. Lemaster, do you have any complaints with your attorney's representation at this time?

**The Defendant:** No.

. . .

**[Prosecutor]:** You're indicating in the plea agreement you've discussed the terms of the plea agreement with your attorney, you're satisfied with your attorney and his advice of counsel, and being aware of all the possible consequences of your plea, you've independently decided to enter this plea of your own free will, and you're affirming that agreement by your signature below, is that correct?

**The Defendant:** That's true.

. . .

**The Court:** You're satisfied with your attorney up to this point in time?

**The Defendant:** Yes, sir.

(J.A. 66–73.) Lemaster agreed that he understood that he would "be sentenced to imprisonment for a term of 60 months." (J.A. at 63.)

The district court accepted Lemaster's plea, sentenced Lemaster to 60 months' imprisonment and three years of supervised release, and ordered Lemaster to pay $160,646.02 in restitution. Lemaster did not directly appeal his conviction and sentence. Instead, Lemaster timely filed a *pro se* § 2255 motion arguing that his attorney was ineffective. Liberally construed, Lemaster's petition alleged, inter alia, that his guilty plea, and thus his waiver of collateral-attack rights, was unknowing and involuntary because (1) his counsel's initial explanation of the proposed plea agreement differed substantially from the final version of the plea agreement and that his counsel failed to explain the changes to him; (2) his counsel failed to inform him, or misinformed him, of the potential punishment that he faced under the plea agreement; and (3) Lemaster was threatened that he would be denied adequate medical care unless he pleaded guilty. (J.A. at 6–8.) Lemaster's petition also contained several other claims of constitutional error, none of which relate to the voluntariness of his plea agreement or waiver of collateral-attack rights.[1]

Without holding an evidentiary hearing, the district court dismissed Lemaster's motion, concluding that Lemaster had knowingly and voluntarily waived his right to file a § 2255 motion. Lemaster now appeals. We granted Lemaster a certificate of appealability, and we have jurisdiction to review the district court's final order on a § 2255 motion under 28 U.S.C.A. § 2253 (West Supp.2004).

## II.

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." *Blackledge v. Allison,* 431 U.S. 63, 71, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). The advantages of

---

1. In addition to the claims discussed in the text, Lemaster alleged in his § 2255 motion that his counsel was constitutionally ineffective in the following respects: (1) counsel failed to provide Lemaster with a copy of the presentencing report; (2) counsel failed to object to the presentencing report as directed by Lemaster; (3) counsel failed to request a downward departure based on Lemaster's diminished capacity; (4) counsel failed to request a downward departure based on Lemaster's deteriorating medical condition; and (5) counsel ignored Lemaster's correspondence. (J.A. at 7–8.) Because the district court held that Lemaster knowingly and voluntarily waived his right to collaterally attack his conviction and sentence, it declined to address these claims on the merits.

plea bargains "can be secured, however, only if dispositions by guilty plea are accorded a great measure of finality." *Id.* To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreements. We have long enforced knowing and voluntary waivers of appellate rights because, just as criminal defendants may waive constitutional procedural rights, such as the right to a jury trial, so, too, they may waive statutory procedural rights, such as the right to appeal their conviction and sentence. *United States v. Wiggins,* 905 F.2d 51, 53 (4th Cir.1990).

■ Although it is well settled that a defendant may waive his right to appeal directly from his conviction and sentence, we have never considered whether a defendant may also waive his right to attack his conviction and sentence collaterally. *But see United States v. Cannady,* 283 F.3d 641, 645 n. 3 (4th Cir.2002) (noting that courts have generally enforced waivers of collateral attack rights). Every Circuit Court of Appeals to consider the issue, however, has held that the right to attack a sentence collaterally may be waived so long as the waiver is knowing and voluntary. *See Garcia–Santos v. United States,* 273 F.3d 506, 509 (2nd Cir.2001); *United States v. Cockerham,* 237 F.3d 1179, 1183 (10th Cir.2001); *DeRoo v. United States,* 223 F.3d 919, 923 (8th Cir.2000); *Watson v. United States,* 165 F.3d 486, 489 (6th Cir.1999); *Jones v. United States,* 167 F.3d 1142, 1145 (7th Cir.1999); *United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir.1994); *United States v. Abarca,* 985 F.2d 1012, 1014 (9th Cir.1993). Like our sister circuits, "we see no reason to distinguish the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in [a] plea agreement." *DeRoo,* 223 F.3d at 923. Accordingly, we hold that a criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary. Thus, if Lemaster's waiver of collateral-attack rights was knowing and voluntary, Lemaster cannot challenge his conviction or sentence in a § 2255 motion.[2]

■ Having anticipated this holding, Lemaster argues that the district court erred by holding that his waiver of collateral-attack rights was knowing and voluntary without holding an evidentiary hearing. When deciding whether an evidentiary hearing is necessary to resolve a § 2255 motion contesting a guilty plea, first "a court must determine 'whether the petitioner's allegations, when viewed against the record of the Rule 11 plea hearing, were so palpably incredible, so patently frivolous or false as to warrant summary dismissal.'" *United States v. White,* 366 F.3d 291, 296 (4th Cir.2004) (quoting *Blackledge v. Allison,* 431 U.S. 63, 76, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) (alterations omitted)). "Only if a

---

**2.** Lemaster does not argue that his allegations fall within the narrow class of claims that we have allowed a defendant to raise on direct appeal despite a general waiver of appellate rights. *See United States v. Marin,* 961 F.2d 493, (4th Cir.1992) ("[A] defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race."); *United States v. Attar,* 38 F.3d 727, 732 (4th Cir.1994) (holding that a

general waiver of appellate rights could not be construed to bar a defendant from raising a claim that he had been wholly deprived of counsel during his sentencing proceedings). Accordingly, we have no occasion to consider whether a district court should address similar claims in a § 2255 motion despite a general waiver of collateral attack rights. As we noted above, however, we see no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights.

petitioner's allegations can be so characterized can they be summarily dismissed." *Id.* at 296–97.[3]

■■■ "[A] defendant's solemn declarations in open court affirming [a plea] agreement ... 'carry a strong presumption of verity,'" *id.* at 295 (quoting *Blackledge,* 431 U.S. at 74, 97 S.Ct. 1621), because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. *United States v. Bowman,* 348 F.3d 408, 417 (4th Cir.2003). "Indeed, because they do carry such a presumption, they present 'a formidable barrier in any subsequent collateral proceedings.'" *White,* 366 F.3d at 295–96 (quoting *Blackledge,* 431 U.S. at 74, 97 S.Ct. 1621). Thus, in the absence of extraordinary circumstances, *see id.* at 300 (holding that admittedly ineffective representation, which the Government conceded rendered the guilty plea involuntary, was "the type of 'extraordinary circumstance [ ]' that warrant[ed] an evidentiary hearing" to determine whether the prosecutor orally agreed that the defendant could plead guilty conditionally); *Fontaine v. United States,* 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973) (holding that the district court should have held an evidentiary hearing when the petitioner introduced documentary evidence supporting his claim that he was severely ill, both physically and mentally, and un-counselled at the time of his Rule 11 colloquy), allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always "palpably incredible" and "patently frivolous or false." *See Crawford v. United States,* 519 F.2d 347, 350 (4th Cir.1975) (holding that "the district court was not required to conduct an evidentiary exploration of the truth of an allegation in a § 2255 motion which amounted to no more than a bare contradiction of statements made by [the petitioner] when he pleaded guilty"), *partially overruled on other grounds by United States v. Whitley,* 759 F.2d 327 (4th Cir.1985) (en banc); *Lasiter v. Thomas,* 89 F.3d 699, 702–03 (10th Cir.1996) ("[The petitioner] [i]s bound by his solemn declarations in open court and his unsubstantiated efforts to refute that record [a]re not sufficient to require a hearing. This case does not involve the most extraordinary circumstances.") (internal quotation marks omitted); *Ouellette v. United States,* 862 F.2d 371, 377–78 (1st Cir.1988) (holding that an evidentiary hearing is not required when a petitioner's uncorroborated allegations are directly contradicted by his testimony at the time of his plea colloquy); *see also Bowman,* 348 F.3d at 417 ("[W]hen a defendant says he lied at the Rule 11 colloquy, he bears a heavy burden in seeking to nullify the process."). Thus, in the absence of extraordinary circumstances,

---

**3.** We have never clearly articulated the standard by which we review a district court's decision whether to hold an evidentiary hearing on a § 2255 motion. Many of our published opinions appear to review such decisions de novo, but do so without announcing a standard of review, *see, e.g., United States v. Witherspoon,* 231 F.3d 923, 926 (4th Cir. 2000). In contrast, our unpublished decisions often use abuse of discretion as the standard, *see, e.g., United States v. Ramirez,* 122 Fed.Appx. 14 (4th Cir.2005); *cf. Raines v. United States,* 423 F.2d 526, 531 (4th Cir. 1970) ("It is within the discretion of the district judge to deny without a hearing Section 2255 motions which state only legal conclusions with no supporting factual allegations.") (internal quotation marks omitted), as do numerous opinions of our sister circuits. *See, e.g., Cooper v. United States,* 378 F.3d 638, 641 (7th Cir.2004); *Covey v. United States,* 377 F.3d 903, 909 (8th Cir.2004). Because the parties did not address our standard of review, and because we would affirm under either standard, we need not decide whether any deference is owed to a district court's decision not to hold an evidentiary hearing on a § 2255 motion.

the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements. Otherwise, a primary virtue of Rule 11 colloquies would be eliminated—"permit[ting] quick disposition of baseless collateral attacks," *Blackledge*, 431 U.S. at 79 n. 19, 97 S.Ct. 1621 (1977).

Against this background, we evaluate the allegations in Lemaster's § 2255 motion. Only three of Lemaster's allegations implicate the voluntariness of his waiver of collateral-attack rights. First, Lemaster alleged that his counsel's initial explanation of the proposed plea agreement differed substantially from the final plea agreement and that his counsel failed to explain the changes in the plea agreement to him. Second, Lemaster alleged that his counsel failed to inform him, or misinformed him, of the potential punishment that he faced under the plea agreement. Finally, Lemaster alleged that he was threatened that he would be denied adequate medical care unless he pleaded guilty. All three of these allegations directly contradict Lemaster's "[s]olemn declarations in open court." *Blackledge*, 431 U.S. at 74, 97 S.Ct. 1621.

During his plea colloquy, Lemaster affirmed multiple times that he "discussed the terms of the plea agreement and all matters pertaining to the charges against [him] with [his] attorney" and that he was "satisfied with [his] attorney and his advice of counsel." (J.A. at 66.) Lemaster also agreed that "being aware of all the possible consequences of [the] plea, [he] independently decid[ed] to enter [ ]his plea of [his] own free will." (J.A. at 70.) The plea agreement states that Lemaster would be "sentenced to imprisonment for a term of 60 months," (J.A. at 48), which is consistent with Lemaster's understanding of the maximum sentence to which he was exposed. Lemaster also affirmed that "as far as [he] kn[e]w the meaning of the word voluntary ... [he] consider[ed] that [he was] voluntarily entering into [ ]his plea of guilty." (J.A. at 72.) Lemaster indicated that he had not been "coerced, threat[ened], or promised anything else ... in exchange for [his] plea of guilty." (J.A. at 69.) He agreed that no "threats or force [had been] applied to [him] in any way to compel [him] to plead guilty." (J.A. at 73.)

In addition to his statements during the Rule 11 colloquy, Lemaster reaffirmed his assent to the plea agreement five months later during his sentencing hearing. At that hearing, Lemaster told the district court that he had not been in his "right capacity" during the plea colloquy because of his medical problems,[4] but that he "kn[e]w what [he was] doing ... today much better." (J.A. at 89, 93.) The district court noted that Lemaster had "appeared to be perfectly normal" at the plea colloquy, but nonetheless gave Lemaster a chance to repudiate his plea agreement. (J.A. at 89.) Lemaster declined the district court's offer, affirming that he "consider[ed][him]self bound by th[e] plea agreement." (J.A. at 92.) Lemaster also agreed that he "waive[d][his] right to appeal anything on the sentence." (J.A. at 95.)

In the face of Lemaster's testimony during his Rule 11 colloquy and sentencing hearing, the contrary allegations in his § 2255 motion are palpably incredible and patently frivolous or false. The Government has not conceded that Lemaster's

---

4. At the time of his plea, Lemaster suffered from severe degenerative changes in his hip, stomach ulcers, obesity, and an unspecified heart condition. (J.A. at 207.)

counsel was ineffective or that his plea was involuntary, *cf. White,* 366 F.3d at 295–96, and Lemaster points to no other extraordinary circumstance that would entitle him to an evidentiary hearing. Accordingly, the district court was not required to hold an evidentiary hearing and was correct to find, on the basis of Lemaster's assertions during his Rule 11 colloquy and sentencing hearing, that Lemaster's guilty plea and waiver of collateral-attack rights were knowing and voluntary.

### III.

Because the transcripts of Lemaster's Rule 11 colloquy and sentencing hearing conclusively establish that Lemaster knowingly and voluntarily waived his right to attack his conviction and sentence collaterally, we affirm the district court's summary dismissal of Lemaster's § 2255 motion.

*AFFIRMED.*