WILKINSON, Circuit Judge,
dissenting:
Counsel here may well have spared his client the death penalty. He may well have saved his life. For that, the attorney should not be hung on an ineffective assistance of counsel claim. I would affirm the judgment and respectfully dissent.
I.
For many years, couples young and old have pulled their vehicles off the Blue Ridge Parkway onto a scenic overlook and watched their affections glow in the shadows of Virginia’s beautiful Blue Ridge Mountains. For that joyful and wholly innocent activity, one member of the couple here paid with his life. The other was seriously injured, and scarred for the rest of hers.
Counsel was presented with a perfectly dreadful case. There was no question of innocence. No one disputes that Jackson committed heinous crimes. According to the stipulation of facts agreed to by Jackson as part of his plea, Jackson shot Davis at least twice with a shotgun, ultimately killing him. Davis fell over the guardrail and Jackson fired again, this time hitting Floyd and causing one of her lungs to collapse. To this day Floyd has eight shotgun pellets lodged in her back. Even after Jackson realized that Floyd was not his daughter — his purported reason for attacking Davis — he continued to struggle with her, causing her to fall to the ledge approximately half a story below. Jackson blocked Floyd’s attempt to escape and then threw rocks at her, causing two skull fractures and a broken finger. According to witnesses, when Floyd escaped in the vehicle that rescued her, Jackson fired at it. These are the facts counsel was left with to do the best he could.
The legal standards applicable to this case are well established. The two-part performance and prejudice test of Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to ineffective assistance of counsel challenges to guilty pleas. Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). As the Supreme Court has emphasized, it’s enough, and often preferable, to say there wasn’t prejudice in rejecting a Strickland claim. See Strickland, 466 U.S. at 697, 104 S.Ct. 2052; see also Hill, 474 U.S. at 60, 106 S.Ct. 366 (rejecting a plea-bargaining Strickland claim on prejudice grounds without analyzing performance).
Although the prejudice prong turns on whether “there is a reasonable probability that, but for counsel’s errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial,” Hill, 474 U.S. at 59, 106 S.Ct. 366, the “petitioner must convince the court that a decision to reject the plea bargain would have been *163 rational under the circumstances,” Padilla v. Kentucky, 559 U.S. 856, 872, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). These inquiries will often be determined by the counterfactual trial outcome: “[W]here the alleged error of counsel is a failure to advise the defendant of a potential ... defense to the crime charged, the resolution of the ‘prejudice’ inquiry will depend largely on whether the ... defense likely would have succeeded at trial.” Hill, 474 U.S. at 59, 106 S.Ct. 366. And, as in the ordinary Strickland case, the trial outcome is to be determined “objectively, without regard for the ‘idiosyncrasies of the particular decisionmaker.’ ” Id. at 60, 106 S.Ct. 366 (quoting Strickland, 466 U.S. at 695, 104 S.Ct. 2052).
Given the horrific facts of this case, a better outcome than that which Jackson received was highly unlikely, and thus equally unlikely would have been Jackson’s decision to go to trial. Not only were the facts as unsympathetic as they could possibly have been, but counsel undoubtedly recognized that pressing Jackson’s sole defense of “voluntary intoxication” was unlikely to gain traction. Voluntary intoxication is well known to be a weak defense to present to a jury, both because it is voluntary and, in this case, even after Jackson was fully aware that he knew none of the people involved, he continued to visit mayhem upon them. The chances that a trial would have produced a better outcome than the plea bargain did were slim to none.
Moreover, the chances of a worse outcome were clearly present. Jackson would have been eligible for the death sentence upon a conviction of first-degree murder. 18 U.S.C. § 1111(b). A lot of times prosecutors bluff with the death penalty in order to get a plea of life imprisonment. Given these facts, however, there is reason to believe that the prosecution was not bluffing, and that counsel acted wisely in getting the death penalty off the table. In sum, a more lenient disposition than that in the plea agreement was unlikely and a stricter disposition was hardly implausible.
Even if Jackson is correct that a defense of voluntary intoxication would have lowered the conviction from first- to second-degree murder, he would still have faced the prospect of a death sentence. 18 U.S.C. § 924(j)(l) clearly provides that any “murder (as defined in [18 U.S.C. § ] 1111)” caused “through the use of a fire-aim” in the course of violating § 924(c) may be “punished by death or by imprisonment for any term of years or for life.” Section 1111(a) defines murder as being one of two types: first or second degree. Section 924(c)(1)(A), under which the government charged Jackson and to which he pled guilty, criminalizes the use of a firearm “during and in relation to any crime of violence.” Thus, as we have recognized, the law clearly permits “the enhanced punishment provided for under § 924(j)(l)” for second-degree murder. United States v. Williams, 342 F.3d 350, 356 (4th Cir.2003).
This conclusion is supported by the Eleventh Circuit’s careful analysis in United States v. Julian, 633 F.3d 1250 (11th Cir.2011). Julian held that “[t]he main point of section 924(j) is to extend the death penalty to second-degree murders that occur in the course of violations of section 924(c).” Julian, 633 F.3d at 1256. In coming to this conclusion, the Eleventh Circuit examined the heading of that section of the Violent Crime Control and Law Enforcement Act of 1994 that added § 924(j): “Death Penalty for Gun Murders During Federal Crimes of Violence and Drug Trafficking Crimes.” Pub.L. 103-322, § 60013, 108 Stat. 1796, 1973. Given the statutory text and this clear indication of congressional intent, I can see no error *164 in the district court’s reasoning that Jackson would still have been death eligible had he been convicted of the second-degree murder charge he now asks us to let him face at trial.
If convicted of second- or first-degree murder — as is highly probable considering the gruesome and largely uncontested facts of the case — Jackson could have been sentenced to death under at least three of the gateway mental states in 18 U.S.C. § 3591(a)(2). There is more than enough evidence to conclude, even in the face of a voluntary-intoxication defense, that Jackson intended to kill Davis, see 18 U.S.C. § 3591(a)(2)(A); intentionally inflicted serious bodily injury that resulted in Davis’s death, see id. § 3591(a)(2)(B); or “intentionally and specifically engaged in an act of violence [shooting at Davis], knowing that the act created a grave risk of death to a person ... such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act,” id. § 3591(a)(2)(D). Although Jackson argues that, on the balance of aggravating and mitigating factors in 18 U.S.C. § 3592, no jury could have sentenced him to death, this wishful thinking ignores the heinous and degenerate nature of Jackson’s crime. Importantly, this balancing test would be the same were Jackson convicted of second- or first-degree murder.
During Jackson’s Rule 11 plea colloquy, the court made sure that Jackson understood that the government would not seek the death penalty on the first-degree murder charge and that Jackson would instead be sentenced to life in prison on his guilty plea. The court also twice confirmed that Jackson was “fully satisfied with the counsel, representation and advice given to [him] in this case by [his] attorneys.” Throughout, Jackson never exhibited any hesitation or second thoughts about pleading guilty. Given that “in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established,” United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir.2005), Jackson’s conduct in his Rule 11 colloquy taken together with his plea bargain make clear that his primary motivation for pleading guilty was to avoid the death penalty. Moreover, I cannot accept the argument that because Jackson was 57-years old at the time of his plea bargain, he may have been willing to roll the dice and face a possible death penalty at trial. A reasonable person of even an advanced age still values his life.
The majority advances the odd hypothesis that, because the Attorney General had not yet decided whether to authorize the death penalty in this case at the time Jackson agreed to the plea bargain, “[t]here is no evidence, at this point, that Jackson’s primary motivation in taking the guilty plea was to avoid the death penalty at all costs.” Maj. op. at 161. On the contrary, the evidence is clearly there in the text of the plea agreement itself. The only plea provision — set, no less, in all caps — that would explicitly allow Jackson to withdraw his plea to first-degree murder was if the government sought the death penalty. The agreement reads:
It is further agreed that if I comply with my obligations under the plea agreement, the United States will not seek the death penalty as to any death eligible charge to which I have pled guilty. IT IS EXPRESSLY AGREED AND UNDERSTOOD THAT THE DECISION TO SEEK OR NOT SEEK THE DEATH PENALTY IS SOLELY IN THE DISCRETION OF THE ATTORNEY GENERAL OF THE UNITED STATES AND THE AGREEMENT NOT TO SEEK THE DEATH PENALTY IS CONDITIONED UPON HIS *165 WRITTEN APPROVAL. IF SUCH APPROVAL IS NOT GRANTED, THE UNITED STATES AND I AGREE THAT I MAY WITHDRAW MY PLEA OF GUILTY TO ANY DEATH ELIGIBLE COUNT SET FORTH IN THE SUPERSEDING INDICTMENT AND PROCEED TO TRIAL ON SUCH COUNTS. J.A.22.
While the majority speculates what the government might or might not have done at a trial, the defendant decided not to take that risk. A critical purpose of a plea agreement is to limit downside risk. That was done. In other words, the very lynchpin of the plea agreement was that Jackson would be spared a possible death sentence. The reality — as opposed to the majority’s speculation — is that the government did not seek a capital sentence and let the plea agreement stand.
II.
Although we need not reach the performance prong, in this case there is some overlap between prejudice and performance, because the result that was achieved was realistically a good one. As for the performance prong, had the lawyer persuaded his client to go to trial, and a poor outcome ensued, we would have another ineffective assistance of counsel claim before us: that counsel performed deficiently in not properly advising his client to accept the plea. This darned-if-you-do/darned-if-you-don’t situation is one in which ineffective claims are the least justifiable, because they illustrate the perils of applying hindsight bias to permissible strategic choices. See Premo v. Moore, — U.S. -, 131 S.Ct. 733, 741, 178 L.Ed.2d 649 (2011).
Jackson today is not on death row. The lawyer did his job. Jackson received a considerable benefit and buyer’s remorse should not be dressed in the garb of an ineffective assistance of counsel claim. While the majority recognizes that the district court was permitted by law to dismiss Jackson’s petition without obtaining a response from the government or holding a hearing, it proposes just such proceedings and argues that they would be “better practice.” Maj. op. at 159. But a response and a hearing are only needed where there is something to respond to or be heard. Under Strickland, there is no reasonable probability that Jackson or any reasonable defendant would have gone to trial had he been told that voluntary intoxication was a possible defense to first-degree murder. The district court did not err in dismissing the petition, and I would affirm its judgment.