KING, Circuit Judge, dissenting:
 

 Appellant Sergio Carrillo Murillo confirmed to the district court in June 2016 that he wanted to plead guilty to a drug conspiracy charge, even if the guilty plea resulted in his "automatic removal" (i.e., his deportation) from the United States.
 
 See
 
 Supp. J.A. Vol. I 11. When faced with that very consequence, however, Carrillo had a change of heart and sought to vacate his conspiracy conviction.
 
 [1]
 
 Carrillo initiated
 these postconviction proceedings in late 2017, by a
 
 28 U.S.C. § 2255
 
 motion, maintaining that he did not mean what he said to the court in his plea proceedings, and that his then-lawyer was constitutionally deficient. That is, Carrillo now contends that - when he pleaded guilty to a drug conspiracy offense - he did not know that his plea could result in his removal from this country. He thus argues that his Sixth Amendment rights were contravened.
 

 In my view, the district court properly rejected Carrillo's § 2255 motion, and correctly ruled that Carrillo could not prove his Sixth Amendment claim by assertions that directly conflict with his plea agreement and his guilty plea colloquy. Because the majority has endorsed Carrillo's effort to undermine his plea proceedings, I respectfully dissent.
 

 I.
 

 A.
 

 After driving across the country to purchase a kilogram of cocaine in California and then transport his load of contraband to Virginia, Carrillo was caught red-handed by the federal authorities as he was selling the cocaine for $40,000 to an informant in the Eastern District of Virginia.
 
 [2]
 
 As a result of this drug trafficking, Carrillo was indicted for two federal offenses and faced up to eighty years in prison. In exchange for the dismissal of one of the charges - and to avoid the near certainty of a five-year mandatory minimum sentence for his illegal activities - Carrillo agreed to plead guilty to a single drug conspiracy offense that obviated the mandatory minimum sentence. He therefore entered into a written plea agreement with the United States Attorney. As pertinent here, Paragraph 19 of the plea agreement provides:
 

 [Carrillo] recognizes that pleading guilty may have consequences with respect to [his] immigration status if [he] is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offenses to which [Carrillo] is pleading guilty. Because removal and other immigration consequences are the subjects of a separate proceeding, [Carrillo] understands that no one, including [his] attorney or the District Court, can predict to a certainty the effect of [this] conviction on [his] immigration status.
 
 [Carrillo] nevertheless affirms that [he] wants to plead guilty regardless of any immigration consequences that [his] plea may entail, even if the consequence is [his] automatic removal from the United States
 
 .
 

 See
 
 Supp. J.A. Vol. I 10-11 (emphasis added). Carrillo and his lawyer each signed the plea agreement, acknowledging and attesting thereby: (1) that they had "carefully reviewed" the entire plea agreement together, and (2) that Carrillo understood and voluntarily agreed to its terms.
 

 Id.
 

 at 14
 
 .
 

 During the guilty plea proceedings conducted in Alexandria on June 21, 2016, the district court placed Carrillo under oath. Carrillo then advised the court that he had reviewed the plea agreement and understood it. He also asserted that he was satisfied with his lawyer's representation. Importantly, Carrillo affirmed to the court that he wanted to plead guilty, notwithstanding that he "may be deported as a result of [his guilty] plea."
 
 See
 
 J.A. 21. After finding that Carrillo was competent
 to plead guilty and that his plea was knowing, voluntary, and supported by a sufficient factual basis, the court accepted the guilty plea and the plea agreement. And Carrillo received significant benefits from his plea bargain: he was sentenced to only 24 months in prison on the single conviction.
 

 B.
 

 About two months shy of his scheduled release date, Carrillo moved in September 2017 to vacate his conspiracy conviction and sentence, alleging ineffective assistance of counsel in the plea proceedings. In his § 2255 motion, Carrillo alleges that he only learned several months earlier that he would be deported as a result of his conspiracy conviction. He faults his lawyer for failing to advise him that he could be deported as a result of his guilty plea. Contrary to his statements in the plea agreement and at the plea hearing, Carrillo contends in his § 2255 papers that he did not know when he pleaded guilty that a possible consequence of his plea was removal from this country. He also asserts that - if his lawyer had advised him of that consequence - he would not have pleaded guilty.
 

 By its order of June 26, 2018, the district court rejected Carrillo's ineffective assistance claim, concluding that he had not shown prejudice from the alleged deficient performance of his lawyer. That is, the court assumed that the lawyer had erred but was satisfied that Carrillo had failed to show "a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial."
 
 See
 
 J.A. 181-82 (internal quotation marks omitted). In so ruling, the court emphasized that Carrillo had explicitly agreed - quoting from Paragraph 19 - that he wanted "to plead guilty ... even if the consequence is [his] automatic removal from the United States."
 

 Id.
 

 at 183
 
 .
 

 II.
 

 A.
 

 I begin with a significant issue that neither the district court nor the panel majority has resolved: whether Carrillo's lawyer performed in a constitutionally deficient manner. Unlike the district court and my good friends in the majority, I would not and do not assume deficient performance by Carrillo's lawyer. To the contrary, I would conclude - without a hearing on Carrillo's
 
 28 U.S.C. § 2255
 
 motion - that Carrillo has failed to show that his lawyer's advice was professionally unreasonable.
 
 See
 

 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 , 687-88,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984). Indeed, Carrillo affirmed - under oath - in his guilty plea colloquy that he was pleased with his lawyer's services. And he had good reason to say so - his lawyer negotiated an extraordinary bargain on his behalf. More importantly, there is simply no dispute that Carrillo's lawyer informed him that his guilty plea would make him removable from the United States.
 
 See
 

 Padilla v. Kentucky
 
 ,
 
 559 U.S. 356
 
 , 374,
 
 130 S.Ct. 1473
 
 ,
 
 176 L.Ed.2d 284
 
 (2010) (holding that "counsel must inform her [criminal defendant] client whether his plea carries a risk of deportation"). And Carrillo confirmed that he understood as much at his guilty plea hearing when he made the solemn declarations that he comprehended the plea agreement and the immigration consequences of his guilty plea.
 
 See
 

 United States v. Lemaster
 
 ,
 
 403 F.3d 216
 
 , 221 (4th Cir. 2005) (emphasizing binding nature of statements made during plea colloquy). I am thus satisfied that the performance of Carrillo's lawyer was not constitutionally deficient, and I would affirm the denial of Carrillo's § 2255 motion on that basis.
 

 B.
 

 Additionally, I would affirm the denial of § 2255 relief because Carrillo failed to show prejudice from the alleged deficient performance of his lawyer. That is, our controlling decision in
 
 United States v. Lemaster
 
 ,
 
 403 F.3d 216
 
 (4th Cir. 2005), obliges us to summarily dispose of Carrillo's postconviction assertions that directly conflict with his sworn statements during his Rule 11 colloquy. Relatedly, the Supreme Court's decision in
 
 Lee v. United States
 
 , --- U.S. ----,
 
 137 S. Ct. 1958
 
 , 1967,
 
 198 L.Ed.2d 476
 
 (2017), instructs that we must disregard Carrillo's
 
 post hoc
 
 assertions and instead look to "contemporaneous evidence" of his "expressed preferences" concerning his guilty plea. And that contemporaneous evidence proves that Carrillo wanted to plead guilty regardless of any immigration consequences, including removal. Moreover, the panel majority's reliance on our more recent decision in
 
 United States v. Swaby
 
 ,
 
 855 F.3d 233
 
 (4th Cir. 2017), is unconvincing. That is,
 
 Swaby
 
 failed to even mention our earlier
 
 Lemaster
 
 decision, and - insofar as those decisions conflict - we are obliged to follow
 
 Lemaster
 
 .
 

 1.
 

 The Supreme Court has long recognized that a criminal defendant's "[s]olemn declarations in open court [during a plea hearing] carry a strong presumption of verity."
 
 See
 

 Blackledge v. Allison
 
 ,
 
 431 U.S. 63
 
 , 74,
 
 97 S.Ct. 1621
 
 ,
 
 52 L.Ed.2d 136
 
 (1977). And we have consistently emphasized that important principle when a criminal defendant seeks to attack his guilty plea under § 2255.
 
 See, e.g.
 
 ,
 
 Lemaster
 
 ,
 
 403 F.3d at
 
 221 ;
 
 United States v. White
 
 ,
 
 366 F.3d 291
 
 , 295-96 (4th Cir. 2004). Crucially, in our 2005 decision in
 
 Lemaster
 
 , our former colleague Judge Williams recognized that "courts must be able to rely on [a] defendant's statements made under oath during a properly conducted ... plea colloquy."
 
 See
 

 403 F.3d at 221
 
 . The
 
 Lemaster
 
 panel thus ruled that "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the [defendant's] sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false."
 

 Id.
 

 (citations and internal quotation marks omitted);
 
 see also
 

 White
 
 ,
 
 366 F.3d at 297
 
 ("[A] court can summarily dismiss allegations of a [defendant] who attempts to challenge statements made during his plea colloquy or in his plea agreement ....").
 

 Pursuant to our
 
 Lemaster
 
 decision, the allegations made by Carrillo in these § 2255 proceedings that contradict his sworn statements during his Rule 11 colloquy are "palpably incredible and patently frivolous or false."
 
 See
 

 403 F.3d at 221
 
 .
 
 [3]
 
 That proposition covers Carrillo's newly minted assertion that he did not know about the potential deportation consequences of his guilty plea. That assertion conflicts with Carrillo's prior sworn statements that: (1) he had reviewed the plea agreement and understood it (including Paragraph 19); and (2) he wanted to plead guilty even though he "may be deported as a result of [that] plea."
 
 See
 
 J.A. 21. Because Carrillo's prejudice contention rests almost exclusively on a postconviction assertion that is "palpably incredible and patently frivolous or false," I would affirm
 the district court's denial of § 2255 relief.
 
 See
 

 Lemaster
 
 ,
 
 403 F.3d at 221
 
 .
 

 My friends in the majority, however, do not accept the binding nature of our
 
 Lemaster
 
 decision. They suggest that
 
 Lemaster
 
 merely stands for the proposition that sworn statements during a Rule 11 colloquy are simply "not irrelevant" to the prejudice analysis.
 
 See
 

 ante
 
 817-18.
 
 Lemaster
 
 makes it clear, however, that we should afford controlling weight to such solemn statements.
 
 See
 

 403 F.3d at
 
 221 ;
 
 see also
 

 White
 
 ,
 
 366 F.3d at 295-96
 
 . Rather than reject
 
 Lemaster
 
 's command, I would adhere to its directive - as we are obliged to do.
 
 See
 

 United States v. Jones
 
 ,
 
 914 F.3d 893
 
 , 899 n.6 (4th Cir. 2019) (explaining that "one panel of this Court is not entitled to overrule another panel" (internal quotation marks omitted)).
 

 2.
 

 Twelve years after our
 
 Lemaster
 
 decision, the Supreme Court, in
 
 Lee v. United States
 
 , --- U.S. ----,
 
 137 S. Ct. 1958
 
 ,
 
 198 L.Ed.2d 476
 
 (2017), reconfirmed the significance of a defendant's statements during guilty plea proceedings. As the Chief Justice explained therein, "[c]ourts should not upset a [guilty] plea solely because of
 
 post hoc
 
 assertions from a defendant about how he would have pleaded but for his attorney's deficiencies."
 

 Id.
 

 at 1967
 
 . Instead, as the Court emphasized, "[j]udges should ... look to contemporaneous evidence to substantiate a defendant's expressed preferences" in relation to a guilty plea.
 

 Id.
 

 Carrillo's attestations in Paragraph 19 of the plea agreement and during the guilty plea colloquy are the best "contemporaneous evidence" of his "expressed preferences" regarding his guilty plea.
 
 See
 

 Lee
 
 ,
 
 137 S. Ct. at
 
 1967 ;
 
 see also
 

 id.
 

 at 1967-68
 
 (emphasizing defendant's assertion during plea colloquy that immigration consequences impacted his decision to plead guilty). This contemporaneous evidence proves beyond peradventure that Carrillo wanted to plead guilty, even if the plea and conviction resulted in his "automatic removal" from this country.
 
 See
 
 Supp. J.A. Vol. I 11. The majority, however, abandons that evidence and instead relies on Carrillo's
 
 post hoc
 
 assertions - the precise type of evidence that the Supreme Court warned us about and rejected in
 
 Lee
 
 . Contrary to
 
 Lee
 
 (and our
 
 Lemaster
 
 precedent), the majority primarily predicates its ruling on the postconviction statements of Carrillo and his supporters.
 
 See
 

 ante
 
 818. But those
 
 post hoc
 
 assertions directly conflict with the "contemporaneous evidence" of Carrillo's "expressed preferences" to plead guilty regardless of any immigration consequences, including removal.
 
 See
 

 Lee
 
 ,
 
 137 S. Ct. at 1967
 
 . Consequently, Carrillo's
 
 post hoc
 
 evidence has no role to play in the analysis of his ineffective assistance claim.
 

 3.
 

 Finally, I disagree with the proposition that our more recent decision in
 
 United States v. Swaby
 
 ,
 
 855 F.3d 233
 
 (4th Cir. 2017), authorizes us to disregard Paragraph 19, which explicitly provides that Carrillo wanted "to plead guilty regardless of any immigration consequences that [his] plea may entail, even if the consequence is [his] automatic removal from the United States."
 
 See
 
 Supp. J.A. Vol. I 11;
 
 see also
 

 ante
 
 817-18. Although my good colleagues observe that the
 
 Swaby
 
 plea agreement contained a provision similar to Paragraph 19, they fail to recognize that the
 
 Swaby
 
 analysis did not acknowledge that provision.
 
 See
 

 Swaby
 
 ,
 
 855 F.3d at 240-44
 
 . Accordingly,
 
 Swaby
 
 provides no guidance concerning the importance of Paragraph 19 to the proper assessment of this case.
 
 [4]
 

 Of additional importance,
 
 Swaby
 
 did not mention
 
 Lemaster
 
 . It also did not recognize or address the principle that a criminal defendant is generally precluded from attacking a guilty plea through a postconviction assertion that contradicts his statements to the court in his plea colloquy.
 
 See
 

 Lemaster
 
 ,
 
 403 F.3d at 221
 
 . And if
 
 Swaby
 
 and
 
 Lemaster
 
 conflict in that respect,
 
 Lemaster
 
 must control our analysis.
 
 See
 

 McMellon v. United States
 
 ,
 
 387 F.3d 329
 
 , 333 (4th Cir. 2004) (en banc) ("When published panel opinions are in direct conflict on a given issue, the earliest opinion controls, unless the prior opinion has been overruled by an intervening opinion from this court sitting en banc or the Supreme Court."). Again,
 
 Lemaster
 
 requires us to disregard Carrillo's § 2255 postconviction assertions attacking his solemn statements to the district court in his guilty plea proceedings. As a result, it is clear to me that Carrillo's § 2255 motion was appropriately rejected.
 

 For these reasons, I would affirm the district court. Because my good colleagues rule otherwise, I respectfully dissent.
 

 I prefer to refer to the appellant as "Carrillo," in that he refers to himself by that name in these proceedings.
 

 According to Carrillo's presentence report, the kilogram of cocaine that Carrillo was selling in Virginia originated from the so-called Sinaloa Cartel in Mexico and its former notorious leader, Joaquín "El Chapo" Guzmán.
 

 Our
 
 Lemaster
 
 decision recognizes an exception for "extraordinary circumstances," which could exist where: (1) the defendant's lawyer admits ineffective representation and the government concedes that the guilty plea was involuntary; or (2) the defendant is "severely ill, both physically and mentally, and uncounseled at the time of his Rule 11 colloquy."
 
 See
 

 403 F.3d at 221
 
 . Neither of those circumstances are present in this case.
 

 My friends in the panel majority also relegate Paragraph 19 to the dustbin because, according to their opinion, that provision is "boilerplate [plea agreement] language."
 
 See
 

 ante
 
 816, 816-17. The majority thus suggests that a plea agreement provision that shows up frequently can simply be disregarded in postconviction proceedings. If there is decisional authority to support such a proposition, I have found none. I would speculate, however, that Paragraph 19 resulted from the Supreme Court's
 
 Padilla
 
 decision.